CLEMENS *v.* ESTES and others.

(*Circuit Court, D. Massachusetts.* February 10, 1885.)

AUTHORS — CONTRACT TO SELL BOOKS BY SUBSCRIPTION — SALE BY AGENTS TO PUBLISHER AT REDUCED RATE — INJUNCTION.

In the absence of notice of the terms of the contract between an author and the agents employed by him, for the sale of his books by subscription at a certain price, a publisher may buy or contract to buy such books from agents who have lawfully obtained them by purchase from the author or his publishers, and may advertise for sale and sell them at any price he may see fit. *Prince Albert* v. *Strange,* 1 Macn. & G. 25, distinguished.

In Equity. Motion for injunction *pendente lite.*

*S. Lincoln* and *G. L. Huntress,* for complainant.

*S. J. Elder,* for defendant.

COLT, J. This is a motion for a preliminary injunction. The material facts, as disclosed in the bill and affidavits, are as follows:

The defendants, Estes & Lauriat, are a firm of book-sellers and publishers located in Boston. In their last holiday catalogue appeared an advertisement in which a new work, entitled "Huckleberry Finn," written by the plaintiff under the name of Mark Twain, was offered for sale at a price reduced from $2.75 to $2.25. The book is sold on what is known as the subscription plan, and the regular subscription price is $2.75. The canvass for the book has been in progress for some months. The advertisement to sell the work for less than the subscription price is working great injury to the regular sales by subscription. The book is not yet published, and will not be before February. On December 3, 1884, the title of the work was deposited with the librarian of congress to secure a copyright. Charles L. Webster & Co., of New York, are the general managers and authorized agents of the plaintiff in the publication and sale of the book. Numerous canvassing agents are appointed in different parts of the country. These agents purchase the books, but bind themselves by contract to sell only to subscribers, and not to the

trade, and for the full retail price. Prior to the time the catalogue was issued, several persons called at the place of business of Estes & Lauriat, and offered them the book at such prices that they could afford to sell it at $2.25, and still make a fair profit. Dummies of the book were left for examination. Two of the persons who called had previously sold Estes & Lauriat other works of the author. Estes & Lauriat contracted with these persons to take 100 or more copies of the book, and then inserted in their holiday catalogue about to be published the advertisement referred to. Up to this time, about 30 orders for the book had been received by them. They had no knowledge of the terms of the contract between the plaintiff, or his publishers, and their canvassing agents. They say the prior works of the author, published by subscription, have been freely offered to them at large discounts. As soon as suit was brought, they cut out the page from the catalogue containing the advertisement; and they have not since and do not propose to distribute any more catalogues containing the advertisement.

Upon this state of facts, the plaintiff prays for an injunction restraining the further distribution of any catalogue containing the advertisement, and also enjoining the defendants from making any agreement, or carrying out any agreement already made with the plaintiff's agents, for obtaining any copies of the book by inducing them to break their lawful contract, or from selling any books except such as may be obtained by subscription or are second-hand. To entitle the plaintiff to any relief of the character asked for, he must first show that the defendants had notice of the terms of the contract between himself and his agents. In their affidavits the defendants deny any such knowledge, and we must be governed by the proof before us. Nor is there any evidence going to show that the defendants tried to induce the agents to sell the books, or to break any contract. In the absence of any notice of the contract, the defendants had a right to buy, or contract to buy, books from agents who lawfully obtained them by purchase from the plaintiff or his publishers, and had a right to advertise for sale and to sell such books at any price they saw fit. The plaintiff may have a right of action against his agents for the violation of their contract, and, from all that appears, they might be enjoined from doing what they had covenanted not to do, (High, Inj. § 713;) but it is not claimed that the defendants were in any way parties to that agreement, or interested in it. Sometimes the jurisdiction of a court of equity to restrain the breaches of negative contracts has been extended to a third party, who has notice of the covenant, or who, by forming a partnership with the wrong-doer, seeks to benefit himself by the injury committed. High, Inj. § 744.

In *Barfield* v. *Nicholson*, 2 Sim. & S. 1, it appeared that the defendant Nicholson, having assigned to Barfield his copyright in a certain book, agreed not to write or publish any work which might be detrimental to its sale. Afterwards, in violation of this agreement, he engaged with one Kelly, the other defendant, in the publication of a work which impeded the sale of the first book. On the ground that Kelly was a partner with Nicholson, and thus connected

with him in interest in the commission of a wrong, the vice-chancellor, Sir JOHN LEACH, granted an injunction against both. Afterwards, it was shown by Kelly that he was not a partner with Nicholson, and had no knowledge of the agreement, and the vice-chancellor dissolved the injunction against him on the ground that, having no notice of the agreement, he could not be affected by it. The plaintiff relies on the case of *Prince Albert* v. *Strange*, 1 Macn. & G. 25. But the decision in that case rests upon a different principle, namely, the right of an author or composer to his unpublished work, or manuscript, kept for private use or pleasure. It is a breach of confidence to publish such a work without the author's consent. And the court, to prevent the invasion of this right, prohibited the publication of a catalogue containing a description of the work. Upon the evidence submitted, I am clear the injunction must be refused.

Injunction denied.