## HARRISON v. MAYNARD, MERRILL & CO.

(Circuit Court of Appeals, Second Circuit. May 29, 1894.)

### No. 137.

COPYRIGHT—INFRINGEMENT—RESTRICTION ON SALES BY PURCHASERS.

The owner of a copyright, who has transferred the title to copyrighted books under an agreement restricting their use, cannot restrain, by virtue of the copyright statutes, sales of said books in violation of the agreement; he is confined to his remedies for the breach of contract.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was a suit by Maynard, Merrill & Co., a corporation, against William Beverley Harrison, for infringement of copyright. The circuit court granted an injunction pendente lite. Defendant appealed.

Rowland Cox, for appellant.

Payson Merrill, for appellee.

Before WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The complainant, Maynard, Merrill & Co., a corporation duly created under the laws of the state of New York, and having its principal office in the city of New York, was, in June, 1893, the owner of the copyright of a book entitled "Introductory Language Work," of which Alonzo Reed was the author, and which had been duly copyrighted by him in July, 1891, under the laws of the United States respecting copyrights. The complainant is a book publisher, and has been in the habit of sending the printed and unbound sheets of this book, and of other books which it published, to George W. Alexander's book bindery, in the city of New York, to be stored there until it gave Mr. Alexander an order to bind a specified quantity, who would sometimes bind a lot in anticipation of such orders. On June 21, 1893, a destructive fire occurred in this bindery, the result of which was, as the complainant supposed, to destroy the commercial value of all the property which it had in the building. One of its employes, at its request, examined the debris, and reported that there was nothing of value which the complainant could use in the manufacture or sale of books. Alexander thereupon sold the entire debris, which had fallen into the cellar, to one Fitzgerald, who resold it, without moving it, to some Italian dealers in waste paper, and, in order to prevent them from using the paper and books for other purposes than paper stock, incorporated the following provision in the contract of sale: "It is understood that all paper taken out of the building is to be utilized as paper stock, and all books to be sold as paper stock only, and not placed on the market as anything else." The cellar was cleared of this class of material, and subsequently a quantity of damaged copies of "Introductory Language Work" appeared in the market, as owned and offered for sale by the defendant, William Beverley Harrison, a dealer in second-hand books, and a citizen of the state of New York, and residing in the city of New

York. The leaves of the books were discolored and stained by smoke and water, but the covers had a respectable appearance, and the complainant supposed that the unbound sheets which had escaped the fire had been rebound by Harrison, or under his direction, or with his privity, and that he was selling such newly-bound books, as well as some bound books which had escaped serious injury; and thereupon brought a bill in equity before the United States circuit court, to restrain his alleged infringement of its copyright. The bill counted entirely upon the right of the complainant under the copyright statutes of the United States. Upon its motion, the court granted an injunction pendente lite.

Harrison denies, in his affidavit, that he purchased any sheets or loose covers of the book. He further says (rather vaguely) that he "learned that certain dealers had come into possession of the salvage from the fire at said Alexander's place; that affiant visited the premises where said salvage was stored, and from them purchased. a number of bound and completely finished volumes, some of which were the publications of the complainant." He further says that he "purchased the said books in the regular course of trade, without any knowledge of any understanding or arrangement, if any there was, between complainant and others; and that he accepted the same, as he believes, according to the established usage of the trade, believing them to be books which had been put upon the market as salvage, as damaged books are bought and sold." The affidavits show that the complainant, which was the owner of the copyright, permitted Alexander to sell absolutely all its copyrighted books in his cellar, and that his vendee obtained the entire legal title to these damaged volumes. They were sold again, together with other paper and books, under express restrictions against their use for any other purposes than for the manufacture of paper. Harrison says that he bought the books in question without knowledge of this restriction. Whether he had notice of facts which should have put a purchaser upon inquiry to ascertain whether he was being made a party to a violation of contract, cannot be determined upon the affidavits. The question, as it arises upon the bill and the affidavits, is: Can the owner of a copyright restrain, by virtue of the copyright statutes, the sale of a copy of the copyrighted book, the title to which he has transferred, but which is being sold in violation of an agreement entered into between himself and the purchaser; or are the remedies of the original owner confined to remedies for a breach of contract? So long as the owner of a copyright retains the title to the copies of the book which he has the exclusive right to vend by virtue of the copyright, he can impose restrictions upon the manner in which and upon the persons to whom the copies can be sold. Having the exclusive right to vend, he has the right to appoint to whom the book shall be sold. If his agents, to whom he has intrusted the possession of his books, violate his instructions, and fraudulently sell to a person with knowledge or notice of the fraud, such fraud will be an infringement of the copyright, with which the original owner has never parted, and can be restrained by virtue of the statutes of the United States. Thus, if the owner of a copyrighted book intrusts copies

of the book to an agent or employe for sale only by subscription and for delivery to the subscribers, and the agent fraudulently sells to nonsubscribers, who have knowledge or notice of the fraud, such sale is an infringement of the original owner's copyright, who can disregard the pretended sale, and have the benefit of all the remedies which the statutes or the law furnish. This right to enjoy the benefit of the copyright statutes results from the fact that the owner has never parted with the title to the book or the copyright, although he parted with the possession of the book. But the right to restrain the sale of a particular copy of the book by virtue of the copyright statutes has gone when the owner of the copyright and of that copy has parted with all his title to it, and has conferred an absolute title to the copy upon a purchaser, although with an agreement for a restricted use. The exclusive right to vend the particular copy no longer remains in the owner of the copyright by the copyright statutes. The new purchaser cannot reprint the copy. He cannot print or publish a new edition of the book; but, the copy having been absolutely sold to him, the ordinary incidents of ownership in personal property, among which is the right of alienation, attach to it. If he has agreed that he will not sell it for certain purposes or to certain persons, and violates his agreement, and sells to an innocent purchaser, he can be punished for a violation of his agreement; but neither is guilty, under the copyright statutes, of an infringement. If the new purchaser participates in the fraud, he may also share in the punishment. Clemens v. Estes, 22 Fed. 899.

The distinction between the remedy of the owner of a copyright and the books published under its protection, who has retained the title to the books and the copyright, and has been defrauded by an unauthorized sale to a purchaser with notice, and the remedy of a copyright owner who has parted with his title to a copy of the copyrighted book, and has been injured by the failure of the purchaser to comply with his contract in regard to its use, is stated by Judge Hammond in Publishing Co. v. Smythe, 27 Fed. 914, as follows:

"The owner of the copyright may not be able to transfer the entire property in one of his copies, and retain for himself an incidental power to authorize a sale of that copy, or, rather, the power of prohibition on the owner that he shall not sell it, holding that much, as a modicum of his former estate, to be protected by the copyright statute; and yet he may be entirely able, so long as he retains the ownership of a particular copy for himself, to find abundant protection under the copyright statute for his then incidental power of controlling its sale. This copyright incident of control over the sale, if I may call it so, as contradistinguished from the power of sale incident to ownership in all property,—copyrighted articles, like any other,—is a thing that belongs alone to the owner of the copyright itself, and as to him only so long as and to the extent that he owns the particular copies involved. Whenever he parts with that ownership, the ordinary incident of alienation attaches to the particular copy parted with in favor of the transferee, and he cannot be deprived of it. This latter incident supersedes the other,—swallows it up, so to speak,—and the two cannot coexist in any owner of the copy except he be the owner at the same time of the copyright; and, in the nature of the thing, they cannot be separated so that one may remain in the owner of the copyright as a limitation upon or denial of the other in the owner of the copy."

The case of Murray v. Heath, 1 Barn. & Adol. 804, which is somewhat relied upon by the defendant's counsel, does not throw a strong

light upon a case arising under the statutes of the United States. The question was whether the sale of the engravings was, under the circumstances of the case, a violation of the English statutes,—which prohibited a piratical publication of the engravings of another,—or was a breach of contract. The court was of opinion that the statutes were not applicable. The other cases which were cited on the argument, are not applicable to the facts of this case, although they are instructive upon the rights of copyright owners under copyright statutes, or of the rights of owners of manuscripts. Stephens v. Cady, 14 How. 529; Stevens v. Gladding, 17 How. 447; Parton v. Prang, 3 Cliff. 537, Fed. Cas. No. 10,784; Bartlette v. Crittenden, 4 McLean, 300, Fed. Cas. No. 1,082; Prince Albert v. Strange, 2 De Gex & S. 652; Taylor v. Pillow, L. R. 7 Eq. Cas. 418; Howitt v. Hall, 10 Wkly. Rep. 381; Hudson v. Patten, 1 Root, 133. The discussion by Judge Hammond upon the general subject in Publishing Co. v. Smythe, supra, is most valuable, and any one who has occasion to examine this subject will find that the territory has been thoroughly explored.

Our conclusion is that, upon the facts stated in the bill and in the affidavits, the complainant has no remedy under the copyright statutes of the United States, and, as both the parties are deemed to be citizens of the state of New York, the complainant is without remedy in the circuit court for the southern district of New York. The order of the circuit court for a preliminary injunction is reversed and set aside, with costs.