### DOAN et al. v. AMERICAN BOOK CO.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1901.)

#### No. 715.

1. APPEAL—ASSIGNMENTS OF ERROR.

Under rule 11 of the circuit court of appeals for the Seventh circuit (31 C. C. A. cxlvi., clxiv., 90 Fed. cxlvi., clxiv.), requiring assignments of error to "specify separately and particularly each error asserted and intended to be urged," where the court made a finding "that all the material allegations of said bill of complaint are true," an assignment of error thereon is sufficient which sets out the language of such finding, being in fact as specific as, in the nature of the case, it could be made.

2. SAME—ORDER GRANTING PRELIMINARY INJUNCTION.

On an appeal from an order granting a preliminary injunction it is a sufficient assignment of error to assert that the court erred in granting the injunction.

**3.** Copyright—Infringement—Right of Owner to Rebind Book.

The sale of a copyrighted book by the owner of the copyright carries with it all the rights and incidents of ownership, including the right to resell and to maintain the book as nearly as possible in its original condition, so far at least as the cover and binding are concerned; and the purchaser or any subsequent owner may rebind the book in exact imitation of its original binding, as regards the title and cover designs, including the name of the publisher, and may sell the same, as so rebound, without infringement of the copyright.

**4.** Unfair Competition—Sale of Rebound School Books.

A dealer who purchases secondhand school books, cleans, trims, and rebinds the same, using covers in exact imitation of the originals, and places them in the market to be sold in competition with those of the publisher, although at a reduced price, is guilty of unfair competition, where, by reason of their new appearance, they are likely to be purchased by children in the belief that they are new books, and the product of the original publisher, including the cover and binding; and a court may properly require a notice to be plainly stamped upon the cover sufficient to prevent such deception.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

This is an appeal from an order entered June 29, 1900, allowing a preliminary injunction upon a bill filed by the appellee, the complainant below, to restrain the defendants therein, the appellants here, from preparing, printing, manufacturing, and from causing to be prepared, printed, and manufactured, any book covers or cover designs which are copies or imitations of the book covers and cover designs made by the complainant for certain school books published by them; and from binding and rebinding, and from causing to be bound or rebound, any book, secondhand or new, in covers which are copies of, or imitations of, the whole or any substantial part of complainant's book covers and cover designs; and from printing or placing thereon the "Galley Cut," so called, or the name, "American Book Company," or from selling any such books with such covers thereon; and from rebinding any secondhand copies of the school books published by the complainant in covers calculated to create the belief that the new covers and the rebinding thereof are of the manufacture of the complainant, or in any covers except those indicating by appropriate language on their face that the new covers and the rebinding of the secondhand books are not of the manufacture of the complainant; and from selling, giving away, delivering, shipping, or in any way handling or disposing of such secondhand books so rebound; and from violating the copyrights and rights of copyright, trade-marks, and trade-mark rights of the complainant in such school text books. The American Book Company is a publisher of school books, employing a large force skilled in preparing and publishing school books, and selling over 1.000,000 copies per annum. Van Antwerp, Bragg & Co. were proprietors of certain school text books, namely, McGuffey's Spelling Book, McGuffey's First, Second, Third, Fourth, and Fifth Readers, Ray's Primary, Elementary, Intellectual, and Practical Arithmetics, Elementary and Complete Geographies. These were composed for them by certain citizens employed for that purpose, and also new, original, and artistic cover designs were prepared by them in 1883. They copyrighted these books in 1877, 1879, and 1883, and assigned the copyrights to the appellee, by whom these text books were revised in 1896, and a copyright issued in that year to that company therefor. The appellee then caused new cover designs to be prepared. As long ago as 1875, Van Antwerp, Bragg & Co. adopted as a trade-mark, and placed upon the covers of these books, the picture of a galley, and used the same in their business until 1890, when they sold this right to the appellee as a trade-mark, and it has since been used by that company upon the covers of their text books. These school books are part of a series of copyrighted school books, known as the "Eclectic Series," forming a complete system, and graduated to meet the necessities of the primary, common-school, and high-school course; and they have been bound in distinctive cover de-

signs, unlike other school text books, and many thousands of them are sold annually throughout the United States, and by their peculiar binding are identified as the goods manufactured by the appellee. These text books for many years had been used in the public schools in the states of Tennessee and Texas, and many thousands of copies had been distributed among families in those states. In the years 1898 and 1899 the school authorities of those states directed the use of other school books published by other firms, requiring the publishers of such to accept the secondhand books published by the American Book Company, and then in use in the schools of those states, in exchange as part of the price of the new book. This "exchange stock," so called, was turned over to the appellants here, who are dealers in secondhand school books, who thus acquired several hundred thousand copies of secondhand school books published by the appellee in different stages of preservation, some soiled and defaced. It appears that some publishers deal in others' secondhand school books, but refuse to sell any secondhand books of their own publication. These secondhand school books are cleaned, the edges of the pages trimmed when necessary, and, when needed, the books are rebound in exact imitation of the original binding, and are sold by the secondhand dealers at about one-half the price of the new books. The sale of these secondhand school books is said to amount annually to over $200,000. There is no charge that the defendants in any instance had sold any book that was other than the genuine and original book published and sold by the appellee, and which came into the possession of the appellants in the manner stated, and that such book was sold by the appellants as and for a secondhand book; and they have not misled the public, except as the secondhand book so rebound might of itself be misleading. It also appears that about 90 per cent. of the school text books in this country are purchased directly by children of tender age, and not by their parents.

Upon the hearing of the motion for preliminary injunction the court, by its order, found "that all the material allegations of said bill are true," and ordered as follows: "It is therefore ordered, adjudged, and decreed by the court that said George B. Doan and Hart Hanson, their confederates, assistants, agents, employés, servants, and attorneys, and each of them, be, and they are, and each of them is, hereby enjoined and restrained until the further order of the court, and that a writ of injunction issue enjoining them until the further order of this court: (1) From binding or rebinding any copies (secondhand or new) of the McGuffey's Readers, McGuffey's Spelling Book, Ray's Arithmetics, Eclectic Elementary Geography, and Eclectic Complete Geography, published by the American Book Company, hereinafter described, or any or either of them, in any covers or cover designs having thereon the name of the complainant, the American Book Company, or the cut described and designated in the bill of complaint as the 'Galley Cut,' or anything that can be mistaken therefor, or any reproduction or simulation or imitation of the whole, or any substantial part of the covers and cover designs described and designated in said bill of complaint as the '1883 Cover Designs' of said geographies, and the '1896 Cover Designs' of said readers, arithmetics, and spelling book, or any or either of them, and from selling, giving away, delivering, shipping, or in any way or manner handling or disposing of any such books so bound or rebound, and from preparing, printing, or manufacturing any such book covers or cover designs for the purpose of binding or rebinding therein or therewith the school text books published by the American Book Company, hereinafter described, or any or either of them." Then follows a detailed description of the books in question, and at the close the order contains the following paragraph: "The above is not intended to prevent the repairing of secondhand copies of school books by rebinding the same in and with the original genuine covers manufactured by the American Book Company, with which said copies or like copies were bound when originally published."

The defendants below filed the following assignment of errors: "(1) That the court erred as to all the findings appearing in the said interlocutory order or decree, and the awarding or granting of an injunction thereby. (2) That the court erred in finding that the material allegations of said bill of complaint are true. (3) The court erred in granting the injunction identified by

said order or decree. (4) The court erred in ordering that these defendants should be enjoined from binding or rebinding any copies (secondhand or new) of the McGuffey's Readers, McGuffey's Spelling Book, Ray's Arithmetics, Eclectic Elementary Geography, and Eclectic Complete Geography, published by the American Book Company, described in said order, or any or either of them, in any covers or cover designs having thereon the name of the complainant, the American Book Company, or the cut described and designated in the bill of complaint as the 'Galley Cut,' or anything that can be mistaken therefor, or any reproduction, or simulation, or imitation of the whole or any substantial part of the covers or cover designs described and designated in said bill of complaint as the '1883 Cover Designs' of said geographies, and the '1896 Cover Designs' of said readers, arithmetics, and spelling book, or any or either of them, and from selling, giving away, delivering, shipping, or in any way or manner handling or disposing of any such books so bound or rebound, and from preparing, printing, or manufacturing any such book covers or book-cover designs for the purpose of binding or rebinding therein or therewith the school text books published by the American Book Company, described in said order, or any or either of them." They thereupon appealed from the order or decree granting the preliminary injunction. The appellee filed its motion to dismiss the appeal because of noncompliance by the appellants with rules 11 and 24 of this court (31 C. C. A. cxlvi., clxiv., 90 Fed. cxlvi., clxiv.), which motion was argued and submitted contemporaneously with the hearing upon the merits.

C. C. Lenthicum, C. K. Offield, and W. J. Calhoun, for appellants.

Jacob Newman, for appellee.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

JENKINS, Circuit Judge, after the foregoing statement of the case, delivered the opinion of the court.

We are of opinion that the motion to dismiss this appeal must be overruled. The motion proceeds upon the ground of noncompliance with rule 11 and rule 24 of this court (31 C. C. A. cxlvi., clxiv., 90 Fed. cxlvi., clxiv). Rule 11 has respect to the assignment of errors, and provides that the appellant should file with his petition for an appeal an assignment of errors "which shall specify separately and particularly each error asserted and intended to be urged." Rule 24 has respect to the briefs of plaintiff in error or appellant, and provides that they shall contain: "2. * * * (2) A specification of the errors relied upon, which, in cases brought up by writ of error, shall set out separately and particularly each error asserted and intended to be urged, and in cases brought up by appeal the specification shall state as particularly as may be in what the decree is alleged to be erroneous." The purpose of those rules is to obtain an orderly presentation of the errors relied upon, that the court may at a glance, and without laborious search, ascertain the precise grounds asserted against the integrity of the judgment or decree. They are rules of order and of convenience, but are not designed to prevent the correction of obvious errors. The first assignment of error is altogether too general, and points out no particular error. The second assignment of error is "that the court erred in finding that the material allegations of said bill of complaint are true." This is also in a sense general, and not specific, but is not more general or less specific than the language of the order or decree which finds "that all the material allegations of said bill of complaint are true." The decree finds no specific

facts, and does not state which allegations of the bill are true and which are untrue or unproved. The order is objectionable in the use of the word "material," as applied to the word "allegations," leaving the matter at large with respect to which allegation the court deemed material and which immaterial. The practitioner can hardly be blamed for couching his exception in the very language employed by the court. He could not tell from the language of the order what fact was deemed material and what immaterial. The third assignment of error asserts the error of the court in granting the injunction. The fourth assignment asserts the error of the court in ordering the injunction with respect to the specific things mentioned in the injunction and in the assignment of error. We have frequently spoken of the necessity of particularity in the assignment of errors, and do not design to recede in any particular from the rule established by the court. We think, however, that with respect to an order granting a preliminary injunction it is a sufficient assignment of error to assert that the court erred in granting the order. The assignment does not require the particularity demanded of a pleading, but only that the error complained of should be pointed out. The case is not like that of exceptions to the charge of the court, a specific part of which is claimed to be erroneous; nor is the case like to that of exceptions to a decree of the court finding specific facts to be true. In such cases the assignment should specify the particular part of the charge or of the decree claimed to be erroneous. This is a mere order granting a preliminary injunction, the office of which is simply to preserve the status quo pending litigation and until set aside. It determines no right, and rests largely in judicial discretion. There was here no need to find specific facts, and there were no specific findings of fact; nor, indeed, are the facts, in any substantial sense, in dispute. The sole question is whether, upon these facts, an injunction should issue to preserve the rights of the parties until a hearing upon the merits. We think that question fairly presented by the assignment that the court erred in granting the injunction, especially when it is coupled with an exception specifying the particular acts enjoined and claimed to have been improperly enjoined.

Coming now to the merits of the order, we are satisfied that there is here no infringement of the right accruing to the appellee under the copyright laws of the United States. The books which are the subject of controversy are copyrighted books, which were printed, published, and sold by the American Book Company. The sale of them by the appellee carried with it the ordinary incidents of ownership in personal property, including the right of alienation. Harrison v. Maynard, 10 C. C. A. 17, 61 Fed. 689; and the appellants, purchasing them, had the right to resell them. The monopoly of the statute with regard to copies sold by the appellee was gone upon their sale. It is urged, however, that the sale passed the right to the particular thing sold, and did not carry with it the right of repair or renewal. We cannot yield assent to the proposition in the broad terms in which it is couched. The question is analogous to that of the repair of a patented machine which has

been sold by the patentee, touching which the supreme court in Chaffee v. Belting Co., 22 How. 217, 16 L. Ed. 240, says:

"Hence it is obvious that if a person legally acquires the title to that which is the subject of letters patent, he may continue to use it until it is worn out, or he may repair it, or improve upon it as he pleases, in the same manner as if it were property of any other kind."

It is unnecessary, as we think, to consider the limitations of that right. We think the right of repair with respect to a copyrighted book sold, to the extent to which that right is here claimed, may not properly be denied. These books had been in use by school children. Some were written upon and defaced; some were soiled and torn; the covers of some were wholly or partially destroyed, and the binding had become imperfect. To render these books serviceable for use or sale, it became necessary to clean them, to trim the edges of the leaves, and to rebind them. We think that, so far as respects the copyright laws of the United States, no legal right of the appellee was invaded by so doing. What was done, was merely the restoration of the books to their original condition when sold by the appellee, or so nearly so as could be done. If it may be assumed that the copyright of the book comprehends the cover and the title of the book, as well as its text and illustrations,—a proposition to which we are not to be held as assenting,— it would be intolerable and odious to hold that a purchaser from the owner of the copyright of a set of books could not restore the binding of one of them in exact imitation of the original and of the other volumes of the set, and that in rebinding the one volume he must differentiate its binding from the binding of the others. A right of ownership in the book carries with it and includes the right to maintain the book as nearly as possible in its original condition, so far, at least, as the cover and binding of the book is concerned. See Harrison v. Maynard, supra.

Under the claim of unfair competition in trade a different question is presented. The American Book Company has attained to a high reputation with respect to its school books. That reputation goes not only to the text of the book, but to the quality of the book itself, the character of the print, the quality of the paper, the binding, and the cover. The latter is of a unique design, catching the eye, and identifying the book as the product of the American Book Company. These books are purchased at retail, as appears from this record, by children of from 5 to 15 years of age. They come to know the books rather by the pictures presented upon the cover than by the text, for they are uninformed as to the text, and purchase them to study the text. The sale of these books is large, amounting to hundreds of thousands annually. It is the duty of a court of equity to protect these children from imposition. It is likewise the duty of a court of equity to protect the American Book Company from any unlawful interference with its trade. As we have said, the appellants have a right to rebind the books which they have purchased, and to re-cover them, and, as we think, in exact imitation of the original covers, and with the name of the American Book Company upon the cover as upon the title-page, **as**

originally placed there by the appellee, and to sell such books; but the rebinding and the re-covering are not the work of the American Book Company, and they should not be held out to the world as responsible for such rebinding or re-covering of the books; nor, as we think, should children of tender age, who constitute a large class of purchasers of such books, be subjected to the possibility of imposition by a sale of them by the retail dealer as a new book, rendered possible by the newness of the cover. While, therefore, we hold that the appellants have the right to rebind and re-cover these books in exact similitude of the originals, amounting to a mere repair of them, and have a right to sell the book so rebound, we are of opinion that the book so rebound and re-covered and offered for sale should have prominently displayed and stamped upon its cover in clear and unmistakable language notice that the book was a secondhand book, rebound or re-covered, as the fact may be, by the appellants; so that the appellee, not issuing secondhand books, shall not be chargeable in public estimation with the character of the binding or of the cover, or with palming off upon purchasers secondhand books as and for new books. In this way, and in this way only, as we conceive, can the vested rights of property of both parties be respected, and the right of the public be subserved. The injunction complained of was, therefore, too broad. It prohibited the rebinding or re-covering of the books in any covers or cover designs having thereon the name of the American Book Company, or having thereon the cut described and known as the "Galley Cut," or having thereon any reproductions, simulation, or imitation of the whole or any substantial part of the original covers. The injunction should be restricted in its terms to accord with the views herein expressed.

WOODS, Circuit Judge (concurring). Excepting the portions touching unfair competition, I concur fully with the foregoing opinion. The supposed duty to protect children from imposition seems to me more imaginary than real. There is no proof or strong probability that imposition has been practiced, or to any considerable extent could be. The books are sold as secondhand, and for a reduced price. Once opened, it is in most instances evident that they are not new, and any attempt to sell them as new could rarely succeed; not so often, I think, as to justify interference by injunction. The proposition that the American Book Company should not be held out to the world as responsible for the rebinding or re-covering of the books has more force, and, though danger in that direction seems to me exaggerated, and probably avoidable without the aid of the courts, I consent to a decree that there shall be stamped on the cover of each book a statement showing that it had been "rebound," and by whom. If anything were needed outside of the book itself to show it to be secondhand, the word "rebound" I think enough.

The order appealed from is reversed, and the cause is remanded to the court below for further proceedings not inconsistent with this opinion.