GINN & CO. v. APOLLO PUB. CO.

(District Court, E. D. Pennsylvania. July 28, 1914.)

No. 1069.

1. COPYRIGHTS (§ 56*)—UNLAWFUL COMPETITION—SECONDHAND BOOKS—RENOVATION—REBINDING—SALE.

While a publisher of copyright books is entitled to protection against unfair competition, in that no other publication shall be palmed off on intending purchasers as those of complainant, the purchasers of such books are entitled to resell, renovate, clean, and rebind them, either by themselves or through another, and hence the original publisher could not restrain a dealer in secondhand books from purchasing, renovating, cleaning, and rebinding complainant's publications and reselling them for what they were.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 52; Dec. Dig. § 56.*]

2. COPYRIGHTS (§ 55*) — INFRINGEMENT — SECONDHAND BOOKS — REBINDING OMITTED PARTS.

Where defendant, a secondhand book dealer, purchased from the public certain of complainant's secondhand copyrighted schoolbooks, and not only renovated, cleaned, and rebound them, but also reprinted and inserted missing parts, selling the reproduced copies as copies of complainant's books, such reprinting and reproduction constituted an infringement of complainant's copyright.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 52; Dec. Dig. § 55.*]

In Equity. Suit by Ginn & Co. against the Apollo Publishing Company. On bill, answer, and proof. Decree for complainant.

See, also, 209 Fed. 713.

The following are the findings of fact and conclusions of law:

### Findings of Fact.

The court finds the following conclusions of fact in the above case:

(1) The plaintiffs are as set forth in paragraph 1 of the bill filed in this case as amended by the agreed amendment to the bill in this respect.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(2) The defendant, Apollo Publishing Company, is a citizen of the state of Delaware, and has a corporate existence under the laws of that state, as set forth in paragraph 1 of the bill and the agreed amendment thereto.

(3) The plaintiffs are some of them citizens of the state of Massachusetts, some of the state of New York, some of the State of Illinois, and some of the state of California, as set forth in paragraph 1 of the original bill and the agreed amendment thereto.

(4) The case arises under the laws of the United States relating to copyrights in part and in part is a suit in equity between citizens of different states, and is a case where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, as set forth in the bill filed in the case and in the agreed amendment thereto.

(5) So far as they are questions of fact the required jurisdictional facts are found to exist in this case.

(6) The plaintiffs are the proprietors as authors, publishers, and owners of the different publications as set forth in the original bill and the agreed amendment thereto, and have complied with all the statutory requirements conferring upon them copyrights under the acts of Congress, as set forth in the bill.

(7) The firm of Ginn & Co., one of the plaintiffs, is and for many years has been a publisher of schoolbooks, making, compiling, publishing, and selling them in nearly all parts of the United States.

(8) The defendant is and has been during the time referred to in the bill of complaint engaged primarily in the business of rebinding of old or secondhand books. It is the owner of a new and useful form of binding, which is patented under the laws of the United States. As incidental to its main business of the rebinding of old books for the owners thereof, it also purchases old or secondhand books, and, after cleaning, renovating, and rebinding such books, resells them as secondhand books. All the books thus rebound and sold by them are plainly marked, "Rebound by the Apollo Publishing Company, Reading, Penna."

(9) During the time complained of in the plaintiffs' bill the defendant has purchased old or secondhand book copies of the plaintiffs' publications, and has cleaned, renovated, rebound, and resold them as old or secondhand books, plainly marked on the cover as books rebound by the defendant.

(10) The defendant has in like manner cleaned, renovated, and rebound old or secondhand books of the plaintiffs' publications for others, and has delivered such secondhand books to the owners thereof as such rebound books.

(11) Some of the books thus improved and resold have been imperfect copies of the original publications, in that parts thereof, consisting in some instances of the title page, in others the page of the book containing the plaintiffs' copyright notice, and the page containing the name of the author, being missing. All the instances in which this was done, however, it was done in cases in which the books were rebound for others in the condition in which they were when delivered to the defendant for rebinding, or when done in cases of a purchase and resale of the secondhand books by the defendant on its own account, the sending out of the imperfect books was due to the neglect or inadvertence of defendant's employés, and was not done by its direction or with its knowledge, the purpose and effort of the defendant having been not to sell on its own account imperfect copies of the books sold.

(12) The defendant has at times supplied parts of secondhand books purchased which had been torn out or were otherwise missing, so as to reproduce in substance the parts missing. This supply of missing parts has, in some instances, consisted of a reproduction of the original maps in geographies which were bound in with and were part of the original publication, and at other times consisted of reprinted pages of text which had been torn out, or were otherwise missing from the secondhand copies purchased and resold by the defendant. There was no effort or attempt in the supply of these missing parts to produce any deceptive imitations of the plaintiffs' publication. The omitted parts were supplied in each instance wholly for the purpose of giving to purchasers of the resold books substantial reproductions of the missing

parts, and parts supplied were substitutions for and ·not imitations of the parts of the original publication which were thus missing. There was no at-· tempt at identity or similitude in the style of type from which the printing was done. The matter, however, copied was the same, and textually the copies were accurate so far as it was practicable to make them so.

(13) The secondhand books of plaintiffs' publications which were thus renovated and rebound by the defendant company, either for the owners thereof or which were purchased by the defendant and thus treated and resold on its own account, were all copies of books which had been regularly sold by the plaintiffs to the original purchasers, and from them passed immediately or mediately to the defendant company by resale, and in every instance the plaintiffs received the full benefit and advantage of the exclusive right conferred upon them by the copyright laws.

(14) In none of the instances of a resale of the plaintiffs' publications or a sale of the secondhand copies thereof was there any attempt by the defendant to palm off the books sold by it as new or original publications of the plaintiffs, nor were these books sold or attempted to be sold in competition with the plaintiffs in the sale of their copyrighted books as new publications.

(15) So far as the same is involved in a finding of fact the defendant has not been guilty of any unfair competition or in any practices involving unfair competition with the plaintiffs in their trade or business as publishers of the books referred to in the plaintiffs' bill, nor has the defendant been guilty of any unfair trade or practices involving unfair trade in this respect.

(16) So far as the same is a finding of fact the defendant has been guilty of an infringement of the copyright of the plaintiffs, in that the defendant has, after the recording of the titles of the books set forth in plaintiffs' bill, and within the term limited within which the plaintiffs have the exclusive right to print and sell the same, and within two years last past, printed and printed, published, and sold parts of the books, the titles of which were so recorded by the plaintiffs, by incorporating such · copies and reprinted portions of the plaintiffs' publications with old, secondhand, or sold copies thereof, and selling the same as old or secondhand copies of the plaintiffs' publications.

## Conclusions of Law.

The court finds the following conclusions of law:

1. So far as the same is a conclusion of law the facts necessary to give the court jurisdiction of the parties to this suit and of the subject-matter of the controversy between them exist, and the court has jurisdiction to grant the relief prayed for in the bill.

2. So far as the same is a question of law the defendant has been guilty of no unfair competition with the plaintiffs or of unfair trade in the respect of the publication or sale of its books as the publications of books of the plaintiffs.

3. So far as the same is a question of law the plaintiffs are the proprietors and possess the exclusive right to print, publish, and sell the books and publications referred to in their bill, under the acts of Congress in such case made and provided relating to copyrights.

4. So far as the same is a question of law the defendant has been guilty of an infringement of the copyright of the plaintiffs in that it has printed and has ·printed, published, and resold parts of the copyrighted books and publications of the plaintiffs by incorporating such reproduced and reprinted portions with the original publications and printed books of the plaintiffs and reselling them as old or secondhand books ·published by the plaintiffs.

5. The plaintiffs are entitled to a decree restraining the defendant from printing, publishing, or selling any portion of the copyrighted books and publications of the plaintiffs, as set forth in the bill, and from incorporating such reprinted portions in old or secondhand books or publications of the ·plaintiffs and selling the same as plaintiffs' books and publications.

6. Plaintiffs are entitled to a decree against the defendant forfeiting to the plaintiffs all the plates on which said printed portions of plaintiffs' copyrighted publications have been copied and every sheet thereof kept or printed.

and to a decree of accounting for the damages sustained by said plaintiffs in its behalf.

7 The plaintiffs are entitled to a decree in their favor and against the defendant for costs.

W. K. Stevens, of Reading, Pa., and G. W. Anderson, of Boston, Mass., for plaintiff.

E. Hayward Fairbanks, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The specific findings of fact and conclusions of law involved in the trial of this case are filed herewith. A very general statement of the facts will suffice to disclose the real questions involved. The plaintiffs complain of two injuries of the commission of which they accuse the defendant. The one is that the plaintiffs are the victims of unfair competition, and the other is that their proprietary copyright has been infringed by the defendant. The plaintiffs are the authors and copyright proprietors and publishers of schoolbooks. The books may be described in general terms as Frye's Geographies, Smith's Arithmetics and Cyr's Readers. The firm of Ginn & Co., one of the plaintiffs, conduct a large publishing house by which these books are printed, published, and sold. All the publications are duly copyrighted. This publishing house sells only new books, the sales being necessarily confined entirely or almost entirely to the boards of education throughout the country who supply books of this character to the pupils in the public schools. The defendant is primarily engaged in the business of bookbinding, and its business is largely, if not wholly, confined to the rebinding of old books. It owns the patent for an improved binding. The merit claimed for this binding is that, owing to its strength and flexibility and consequent durability, it is especially adapted to stand the rough usage with which books meet in the hands of children. A good part of the business carried on by the defendant consists of cleaning, renovating, and rebinding old books for the owners. They do, however, an additional, if more or less incidental, business in the way of purchasing old or secondhand books and reselling them in an improved condition for use. They are in no proper sense publishers. All the reissued books of the defendant are marked "Rebound by the Apollo Publishing Company, Reading, Penna."

The particular complaints of the plaintiffs, under their general complaint of unfair competition, are that the defendant is publishing, or at least reselling, the publications of the plaintiffs in an imperfect, mutilated, and deceptive form, in that it sometimes reissues the books with, in some instances, the title missing, in others, with the copyright notice omitted, again with maps and portions of the original text of the books gone, and at times the name of another than the real author of the book named as the author. The particular complaint, under the general complaint of an infringement of plaintiffs' copyrights, is that the defendant has purchased old books with missing maps and parts of the text gone, and has supplied these by copying the plaintiffs' maps and reprinting portions of the text to supply the missing parts, has incorporated these reproduced parts with the old books, and has sold them as the publications of the plaintiffs.

The dual character of this general complaint calls for an inquiry into two questions: First, whether the defendant has been guilty of unfair competition; and, secondly, whether it has infringed upon the proprietary rights of the plaintiffs accorded them under the copyright laws.

A statement of the general rights of both parties to this controversy will be helpful as a starting point from which to discuss the points at which their respective claims of right clash.

[1] The plaintiffs are entitled to the full protection of the law from having the trade which they would otherwise be able to command diverted to the defendant by any methods so unfair as to come within the ban of the law. In its most general statement this right is that no other publications shall be palmed off upon intending purchasers as the publications of the plaintiffs. If an intending purchaser of books has the purpose in mind to buy the publications of the plaintiffs, and he is deceived into buying other publications thinking he is buying those of the plaintiffs, an injury is done to the plaintiffs which the law can and should redress. In order "to promote the progress of science and the useful arts," and to encourage authors and publishers to develop their talents and to undergo the labor and expense of producing original works which will be of value because of the benefit and advantage thereby accruing to the people, the law has granted an exclusive proprietary right to authors and publishers to all such publications. In the assertion of this right they should, at all times, receive full and adequate assistance from the law. Out of these rights, however, and indeed in order to give them full expression, grow the rights of the purchasers of such publications. One of these rights is the right to resell a book when once purchased. This right should likewise be full and untrammeled. Another right incidental to it is the right to care for and keep in good condition the books thus purchased. This necessarily gives the right to renovate, clean, and rebind. What they can do for themselves they can rightfully secure the services of others to do for them. This in turn involves a right of another kind, which is to purchase secondhand books and to do with them what the original purchaser had the right to do, one of which things is the right to vend them without or after renovation. While it is doubtless true that the part of the purchasing public which is thus supplied with secondhand books is withdrawn from the market for the purchase of new publications, a publisher of books and a secondhand dealer in books (where there is no attempt to pass off the one for the other) cannot be said in any proper sense of the term to be in competition. Where there is no competition there can be no unfair competition, and it would seem to follow, therefore, that as the plaintiffs, so far as they are dealers, deal wholly in new publications, and the defendant, so far as it is a dealer, deals wholly in secondhand books, they are not in competition the one with the other. The charge of unfair competition must therefore fall.

[2] The claim of infringement of copyright stands, however, upon a different footing. This is what may be termed a conventional and artificial right. It is a right conferred by the law in pursuance of a

policy of its own, and may therefore and does extend so far as the law has decreed it shall extend in the promotion of its policy. It is manifest that this law must be futile and fail in its purpose if the publication of one who has put his talents, his time, and his labor to the production of a book can be met with a book of another which is a mere copy of his own, the cost of which to the second publisher has been reduced by the saving of all the expense of the publication, except what might be termed the merely mechanical part. If, therefore, the plaintiffs and the defendant were in competition in the sale of books, the test of whether there had been any infringement of the right of the plaintiffs would be whether any forbidden use had been made of the plaintiffs' publications.

One obstacle in the way of the mind yielding assent to the argument for the plaintiffs is that it seems to lead to a conclusion which cannot be accepted. In other words, it proves too much. If the right of a purchaser of the plaintiffs' publications is, as it would seem must be conceded, to resell a book purchased by him, after his use of it had ended, the one argument of the plaintiffs being that the sale of the book with any of its parts missing is an infringement of the plaintiffs' right because it is unfair competition, and the other argument being that the sale of the book with the missing parts supplied is a legal injury to the plaintiffs because it is an infringement of their copyright, then the conclusion is inevitable that a purchaser loses the right of resale altogether unless the book which he resells is perfect in all its parts. This would be to restrict and limit the rights of the purchaser to an extent which would be unfair to him and be a deprivation of a right which he is conceded to possess. The soundness of the second argument adduced, however, is not necessarily impaired by the finding of the first to be unsound. This, therefore, resolves the whole question into this: Is the copying into a secondhand book of a map or a small portion of the text of the original publication which may be missing and the selling of the book with its replaced parts as a secondhand book an infringement of the plaintiffs' copyright? This is a question which must be determined by a fair construction of the acts of Congress on the subject of copyrights as interpreted in the light of the decided cases. Upon this question, the cases which deal with new publications which have had incorporated in them portions of a copyrighted work afford us some general aid. It would seem at first sight that the two acts are not the same either in purpose or in the thing done, except in the particular that in each case a part of the copyrighted publication has been reproduced. In the one case the intention and purpose is to sell a secondhand copyrighted book for what it is and to perfect it by supplying the missing parts. In the other, the intention and purpose of the offending publisher is to make a market for his publication by availing himself of some of the labors of the publisher whose previous work has been copyrighted, and to this extent to sell the product of the labor of the first publisher as his own and to reap the profits. The gravamen of each offense, however, is the same. Each has the right to sell that which is his. Neither has the right to make his own property more valuable or more salable by in-

corporating with it any part of the property of another. The man who is the purchaser of a copyrighted book may resell it for what it is without any infringement of the copyright laws. Doan et al. v. American Book Co., 105 Fed. 772, 45 C. C. A. 42. He may rebind or otherwise improve its condition or appearance for the purposes of a resale without being guilty of unfair trade, provided he does not palm it off as the publication of the original publishers. Id. The other man unquestionably has the right to sell his own publication without the pirated parts.

There does not seem to be any adjudged case in which the precise point here presented has been raised. If, however, it would have been an infringement of the plaintiffs' copyright to have incorporated in an original publication as much of the copyrighted books as was added to the secondhand books to supply the missing parts, then the doing of this would be a like infringement. There are many cases of new publications to serve us as illustrations, but the precise point to be ruled here must be decided without any decided case which is on all fours with this to guide us.

This point of the present case must therefore of necessity be disposed of as one of "the first impressions." The purpose and intent of the copyright law is "to give to authors the exclusive right to" the productions of their brains when reduced to the form of writings, and to this end they are given by the acts of Congress "the sole liberty of printing, reprinting, publishing, completing, copying" and of "vending the same." The right thus given is further defined by Congress as an "exclusive right." It is by other provisions of the law forbidden to others than the author to print, publish, or sell a copy of any such work. It must be that the proprietary right thus given to the author in the whole likewise extends to all its parts. When a copyrighted book is published and sold, however, something is necessarily given to the purchaser and acquired by the general public. One thing acquired is the fact that the author has expressed certain thoughts. This is a fact in literature of which any one is free to avail himself as he is of any fact made public. It can be commented upon and discussed and the author's work reproduced so far as to make the comments intelligible. The purchaser of a particular copy, as we have seen, acquires the right to resell it or to preserve and renovate it. Out of these acquired rights from the author, and out also of the doctrine of de minimis which doubtless also applies, grows the necessity of drawing the line between the lawful and the forbidden use of copyrighted publications. There would surely be difficulty and doubtless danger in the attempt to define that line. "Omnis definitio in lege periculosa est." It is not so difficult to draw the line in particular cases of original publications. Black v. Allen (C. C.) 42 Fed. 618, 9 L. R. A. 433, gives us one illustration. Cobbett v. Woodward Law Rep., 14 Eq. 407, Bradbury v. Hotten Law Rep., 8 Exch. 1, Kelly v. Hooper, 4 Jur. 21, Whittingham v. Wooler, 2 Swans. 428, and Mawman v. Tegg, 3 Eng. Ch., 385, are cited to us as other illustrations. Any digest of copyright cases will afford many more.

It is neither so easy nor are we favored with as many illustrations in cases of the renovation and reselling of secondhand copies of the protected publication. The bare right to resell is made clear. The right to recover, rebind, and to replace a title page has been decided, but this is at least in part upon a halting accord to the author of including the cover, binding, or title page in his copyright. The expression which comes the nearest to being a statement of the rights of the author in this respect is to be found in the dictum in Harrison v. Maynard, 61 Fed. 689, 10 C. C. A. 17. It is to this effect: After ruling that "the right to restrain the sale of a particular copy of the book by virtue of the copyright statutes has gone when the owner of the copyright and of that copy has parted with all his title to it, and has conferred an absolute title to the copy upon a purchaser," and that "the exclusive right to vend the particular copy no longer remains in the owner of the copyright," the opinion is expressed that "the new purchaser cannot reprint the copy. He cannot print or publish a new edition of the book." This would seem to be in accord with a sound view of the copyright law. It would seem further to follow that as he cannot reprint the book, he cannot reprint any material part of it. This brings us pretty close to the acceptance of the republication cases as analogues.

Another line of cases which might seem to furnish further illustrations will be found not to supply true analogues. These are the cases arising under the patent laws. There the right to repair, to improve, and to replace broken or missing parts has in some instances been permitted to the purchaser. If the right of the purchaser there had been extended somewhat further than it has, the cases might be considered analogous but under the restrictions imposed they are not. The right given to authors and publishers should be so guarded and protected as to give them the practical benefits the law meant them to receive. This certainly calls upon us, if they are to be protected against a reproduction of the whole of their works, to protect them against a reproduction of any part where the reproduction of that part means to take from them the exclusive right to make a sale which otherwise would have been made by them. Such is the case when the work reproduced and sold is the same work which they alone have the right to produce and sell.

We have therefore reached the conclusion that in reprinting parts of the plaintiffs' books and incorporating such reprinted parts with parts of sold copies of the same works and selling the reproduced copies as copies (as they then are) of the plaintiffs' books, the defendant has infringed upon the proprietary rights given to the plaintiffs under the copyright laws, and to this extent the plaintiffs are entitled to a decree in their favor, with costs.

A decree in accordance with this opinion, and the findings of facts and conclusions of law filed herewith, may be prepared and submitted by counsel.