## NATIONAL GEOGRAPHIC SOC. v. CLASSIFIED GEOGRAPHIC, Inc., et al.
### No. 4509.

District Court, D. Massachusetts.
May 17, 1939.

656

William R. Cook and Johnson, Clapp, Ives & Knight, all of Boston, Mass., and Elisha Hanson and Eliot C. Lovett, both of Washington, D. C., for plaintiff.

Nathan Tobin, of Lynn, Mass., for defendants.

BREWSTER, District Judge.

This is an action brought for injunctive and other relief against a corporate defendant and three individuals controlling said corporation.

The action is brought under the Copyright and Trademark statutes and also is based on allegations of unfair competition.

The facts are not in dispute. They are fairly and fully stated in plaintiff's brief and are abundantly supported by evidence.

1. The National Geographic Society is a scientific and educational institution, not organized for profit, which was originally incorporated under the laws of the District of Columbia in 1888. Its object is to gather and diffuse geographic knowledge. Since 1889, one of its chief vehicles for diffusing geographic knowledge has been, and still is, The National Geographic Magazine, which is published monthly by plaintiff.

2. In its work of gathering and diffusing geographic knowledge, plaintiff has conducted and sponsored numerous research expeditions, the work of which is described in its Magazine. In carrying out this work and publishing The National Geographic Magazine, plaintiff has expended many millions of dollars. All of the component parts of The National Geographic Magazine are covered by copyrights under the Federal Copyright Law.

3. Over a long period of years plaintiff has compiled, adapted, arranged and published in book form material that has appeared in its Magazine. The National Geographic Magazine, and those publications, adaptations and arrangements in book form, in turn, have been copyrighted under the provisions of Section 6 of that Copyright Law, 17 U.S.C.A. § 6, and offered for sale to the public. Among such compilations of the plaintiff are, "The Book of Birds", "Our Insect Friends and Foes and Spiders", "The Book of Fishes", "The Book of Dogs", "Horses of the World", and "Cattle of the World".

4. The plaintiff publishes each month over a million copies of The National Geographic Magazine and distributes them to members of the Society and to subscribers throughout the civilized world. That magazine has become widely known as "The Geographic". By that magazine the numerous research expeditions conducted or sponsored by the plaintiff, and its many other contributions to the science of geography, the plaintiff has built up a substantial goodwill for itself and for its Magazine.

5. In addition, the plaintiff conducts a School Service Department, which provides teachers and scholars with weekly bulletins and also it is prepared to furnish information to teachers and others on matters of the geographic nature. Much of the material for this service is compiled, abridged or arranged from articles which have appeared or are about to appear in the Magazine.

6. The plaintiff has duly registered the name of its publication, The National Geographic Magazine, and the front cover of that Magazine in the United States Patent Office. In addition, the said name was also duly registered under the Trade-Mark Registration Laws of Massachusetts.

7. The defendant, Classified Geographic, Inc., is a corporation organized and existing under the laws of the Commonwealth of Massachusetts. Its chief business is the adaptation, arrangement and compilation of material which has appeared in The National Geographic Magazine, the publication of that material as adapted, arranged and compiled in book or pamphlet form and the sale of such books and pamphlets to the general public. Defendant, Classified Geographic, Inc., does not reprint any of said material but obtains all of such material from copies of The National Geographic Magazine, which it has purchased in various markets and which it treats as secondhand property. Defendant, Classified Geographic, Inc., classifies the articles in these various magazines under topical subjects, tears the magazines apart, segregates the particular articles desired, then brings the articles under each one of the particular topics together for publication in book form, binds them in a substantial backing and finally offers them for sale as an original compilation of articles from The National Geographic Magazine. Likewise, it takes from the magazines which it has purchased individual articles on various topics and publishes them in a pasteboard binding and offers them for sale in such changed form.

8. On the outside cover of certain of said compilations in book form the following appears:

"Classified Geographic, Inc.
"Articles Compiled and Rebound from National Geographic Magazines"

On the outside cover of the single articles rebound for distribution, the following appears:

"Articles Classified and Rebound from
National Geographic Magazines

Classified Geographic, Inc.
Lynn, Mass.                    Price 15c"

On the outside cover of the book volumes there is a simulation of a portion of plaintiff's registered trademark. And on the outside cover of the bound single articles there is a simulation of another part of plaintiff's registered trade-mark.

In both the book form and the pamphlet form there is a preface, the first three paragraphs of which read as follows:

"In reading the National Geographic Magazine an outstanding thought presents itself; *namely, if this material could be compiled it would facilitate research in the various fields treated.* Doubtless this thought has been expressed many times, *but in the compilation lies the originality of our work."* (Italics supplied.)

"The grouping of these topics is the result of a methodical culling of National Geographic Magazines published over a period of twenty years. Hence, every article contained in these volumes is authentic and authoritative. We have made a careful list of subjects under every topic in order to enable the reader to find exactly the phase of that particular subject he is seeking. Much care, therefore, has gone into the orderly compilation of factual material.

"Our classifications follow as nearly as possible along the lines of subjects in the elementary and high schools. Teachers of geography need no introduction to the magazine, for it is an invaluable supplement to classroom work. The informal travel articles and beautifully colored plates enrich the ordinary classroom lesson. Herein lies the chief value of these magazines to the younger student, for they cannot be considered in the same category as the ordinary cut-and-dried reference work."

9. Defendant, Classified Geographic, Inc., has adapted, arranged, compiled, published and offered for sale copyrighted material taken from plaintiff's magazine, The National Geographic Magazine, in book form under the subjects of "Birds", "Fish", and "Domestic Animals and Insects", large portions of which copyrighted material also had been adapted, arranged, compiled, published and offered for sale by plaintiff in its volumes hereinbefore referred to. As to a large portion of the material contained in all of the volumes of articles from The National Geographic Magazine published by the corporate defendant, there is no notice to the public in those volumes that that material has been copyrighted by the plaintiff although, in fact, all of it has been so copyrighted.

10. In order to facilitate the sales of plaintiff's articles as adapted, arranged and compiled, defendant, Classified Geographic, Inc., has issued a catalog to the general public outlining the scope of the material which it offers. This catalog contains an announcement of the "Unique Service" offered by said defendant and a claim to "originality" in its work. It also contains a topical index, enumerating eighty-one subjects on which said defendant is prepared to furnish material taken from plaintiff's magazine. Following the index are forty-two pages in which the separate articles adapted, arranged and compiled from plaintiff's magazine and published by said defendant, are described, first under the general topics as printed in the index, and second, under the identical titles given to the articles in the National Geographic Magazine. More than one thousand of these articles are so listed and offered for sale, either in book or pamphlet form as adapted, arranged, compiled and published by said defendant.

11. The said catalog also lists the prices at which said defendant's publications will be sold, those prices ranging from 15 cents for certain articles published by said defendant in pamphlet form to $246 for one set of forty-four volumes compiled and published in book form.

12. The defendants' publications show lack of editorial skill and care in their preparation. They omit many of the leading articles on those subjects published in the plaintiff's magazine. The compilations of articles as published by the defendants are so seriously defective and so unrepresentative of the articles actually published by the plaintiff on the various topics covered by the defendant's publications that they tend to injure the reputation and diminish the goodwill attached not only to the plaintiff's magazine but also to the value of the plaintiff's whole field of scientific activities by generating in the minds of the purchasing public a depreciated valuation of the articles published by the plaintiff and by creating a false impression concerning the value and quality of the plaintiff's work.

13. Defendant, William Burdette Wilkins, was treasurer and director of the corporate defendant, and a stockholder, until Sept., 1938. Defendant, Hyman B. Chandler, is president and director of the

corporate defendant and a stockholder therein, and defendant, George F. Gilbert, is treasurer, clerk and director of the corporate defendant and a stockholder therein. Said corporate defendant, Classified Geographic, Inc., was incorporated by said individual defendants, Wilkins, Chandler and Gilbert, to carry on the business of adapting, arranging, compiling, publishing and selling material taken from The National Geographic Magazine, after said individual defendant Wilkins had asked for the consent of the National Geographic Society to conduct such a business which consent was refused by the Secretary of the Society. Also, following further representations by said individual defendant Wilkins, consent was refused by the Attorney for the Society who is also a Trustee of the Society, who formally notified said defendant that the use of the material without the consent of the plaintiff, the use of the title "Geographic Articles", the use of the name "Classified Geographic Co." and the use of the phrase "Articles Compiled and Rebound from National Geographic Magazines", as well as the use of the word "Geographic" in the manner planned not only met with the disapproval of plaintiff but constituted a violation of law and, if persisted in, would compel the plaintiff to take the proper action to protect its property rights.

14. Until Wilkins severed his connection in 1938, the individual defendants were in full control of the corporate defendant and directed the acts of infringement of the corporate defendant of which the plaintiff complains. Since September, 1938, the defendants Chandler and Gilbert have so controlled and directed the affairs of the corporation.

15. It appears that the defendant has not been able to promote a very extensive or profitable business. It has now on hand only a few samples of its books and pamphlets. It is probably insolvent.

Plaintiff seeks relief on three grounds: (1) Infringement of plaintiff's copyright; (2) violation of plaintiff's trademark, and (3) unfair competition.

The defendants contend, on the other hand, that as owner of secondhand copies of The National Geographic Magazine, lawfully acquired, they do not impinge on any exclusive right of plaintiff by breaking-down, re-arranging, binding and selling the copyrighted material. With equal confidence they claim that these operations do not constitute acts of unfair competition.

The Copyright Act of 1909 (section 1, 17 U.S.C.A. § 1) gives to any person entitled thereto the exclusive right "to publish" and "vend" the copyrighted work. Section 3 of the Act, 17 U.S.C.A. § 3, further provides as follows:

*"Protection of component parts of work copyrighted; composite works or periodicals.* The copyright provided by this title shall protect all the copyrightable component parts of the work copyrighted, and all matter therein in which copyright is already subsisting, but without extending the duration or scope of such copyright. The copyright upon composite works or periodicals shall give to the proprietor thereof all the rights in respect thereto which he would have if each part were individually copyrighted under this title."

■■ I am of the opinion that the arrangement of the plaintiff's material with the prefatory matter was intended to be, and was, a new publication of copyrighted material which invaded plaintiff's exclusive right to publish, not only the magazines but also the books published by it in which it had compiled articles taken from the magazines. United States v. Williams, C. C., 3 F. 484.

"In its ordinary acceptation, the word 'publication' means 'the act of publishing a thing or making it public; offering to public notice; or rendering it accessible to public scrutiny.' In copyright law, it is 'the act of making public a book; that is, offering or communicating it to the public by sale or distribution of copies.'" D'Ole v. Kansas City Star Co., C.C., 94 F. 840, 842.

This is precisely what the defendant corporation has been doing with material taken from copyrighted magazines. I do not think the definition can be limited to the first publications only, when considered in the light of other provisions of the copyright law, hereafter noted.

■ The Act gives to the plaintiff the exclusive right to compile, adapt or arrange its copyrighted work, to grant that privilege to others and, by necessary implication, it has the right to refuse its consent to any compilation, adaptation or arrangement by others of the copyrighted work. This follows from the provisions of section 5(a), 17 U.S.C.A. § 5(a), which permits the copyrighting of books and other compilations; and also from the provisions

of section 6, 17 U.S.C.A. § 6, which reads as follows:

"§ 6. *Copyright on compilations of works in public domain or of copyrighted works; subsisting copyrights not affected.* Compilations or abridgements, adaptations, arrangements, dramatizations, translations, or other versions of works in the public domain, or of copyrighted works when produced with the consent of the proprietor of the copyright in such works, or works republished with new matter, shall be regarded as new works subject to copyright under the provisions of this title; but the publication of any such new works shall not affect the force or validity of any subsisting copyright upon the matter employed or any part thereof, or be construed to imply an exclusive right to such use of the original works, or to secure or extend copyright in such original works."

█ It cannot be successfully denied that the use made of the material taken from the secondhand copies of the magazine amounted to a "compilation" or an "adaption" or an "arrangement" of copyrighted works, within the usual and ordinary meaning of those words. It is established by the evidence that plaintiff not only refused to give its consent to this use but notified the defendant in writing that it would regard such use as an infringement of its rights.

█ Sec. 41 of the Act, 17 U.S.C.A. § 41, provides as follows:

" § 41. *Copyright distinct from property in object copyrighted; effect of sale of object, and of assignment of copyright.* The copyright is distinct from the property in the material object copyrighted, and the sale or conveyance, by gift or otherwise, of the material object shall not of itself constitute a transfer of the copyright, nor shall the assignment of the copyright constitute a transfer of the title to the material object; but nothing in this title shall be deemed to forbid, prevent, or restrict the transfer of any copy of a copyrighted work the possession of which has been lawfully obtained."

It is clear that the Act distinguishes between the ownership of copyright and ownership of the material copyrighted by providing that the sale of the object shall not of itself constitute a transfer of the copyright, but the section recognizes the right of a lawful owner to transfer a copy of a copyrighted work.

█ Defendants argue that as an incident to the ownership of the magazines the owner may make a recompilation, or rearrangement, of the material and publish it in the form of a book or pamphlet so long as he does not copy or re-print any part of the articles used.

██ The defendant's attorney concedes that he has been unable to find any case exactly in point. Decisions supporting the proposition that an owner of a copyrighted publication may re-sell it in its original form are clearly not in point. The right of an owner to restore a secondhand book to its original condition, so far as cover and binding are concerned, is established. Doan v. American Book Co., 7 Cir., 105 F. 772; Bureau of National Literature v. Sells et al., D.C., 211 F. 379; Ginn & Co. v. Apollo Pub. Co., D.C., 215 F. 772. But such restoration may lay the dealer open to the charge of unfair competition, if he sells the book without distinctive notice to the public that the book is a renovated work. Ginn & Co. v. Apollo Pub. Co., supra; Doan v. American Book Co., supra. The right, however, to renovate and re-sell copyrighted work does not extend to printing, or replacing, pages lost or mutilated. Ginn & Co. v. Apollo Pub. Co., supra.

The case nearest in point is Kipling v. G. P. Putnam's Sons, 2 Cir., 120 F. 631, 65 L.R.A. 873, where it appeared that unbound volumes were bound and re-sold. The court held there was no infringement of the copyright, but it is to be noted that these unbound volumes were purchased from the copyright proprietor or his licensee, and it is difficult to escape the conclusion that the compilation was with the consent of the proprietor. In the case at bar, there was no such consent.

My conclusion, therefore, is that the compiling of the articles from plaintiff's magazines in book, or pamphlet, form, and the sale of them, infringes plaintiff's exclusive right, secured by its copyright.

██ With respect to the trademark violation and unfair competition, these may be considered together, since the substantive law of trademarks is generally regarded as a branch of the broader doctrine of unfair competition. G. & C. Merriam Co. v. Saalfield, 6 Cir., 198 F. 369. The words "National Geographical Magazine" were registered as a trademark. Although the words "National" and "Geographic" are words of description, their long and wide use has given to them a secondary mean-

ing. American Products Co. v. American Products Co., D.C., 42 F.2d 488; Central Shoe Co. v. Central Shoe Co., Inc., D.C., 58 F.2d 680. They have come to symbolize the works of the plaintiff, and the goodwill which it had acquired as a result of large expenditures of money involved in gathering original articles appearing in its publication under the name of "The National Geographic Magazine".

The corporate name of the defendant included the word "Geographic", and the outside covers of defendant's book and pamphlet carried the words "Articles compiled and rebound from National Geographic Magazine", thus giving a prominent place to the words constituting the trademark.

Except for the use of these words in the title to the defendant's book there is little, if any, similarity in outward appearance between the defendant's book and those published by plaintiff. It was shown by testimony that on several occasions the plaintiff had received requests for information, and, on one occasion, an order from persons who had mistakenly assumed that the plaintiff was furnishing and selling defendant's books and pamphlets. One who carefully examined the title would have no difficulty in understanding that the books were not those of the plaintiff, but a casual observer would readily associate them with the plaintiff's publications. The inferiority of the defendant's compilations was, therefore, bound to injuriously affect the reputation of the plaintiff's copyrighted works and to impair its goodwill, perhaps not to any great extent, but the injury is present and was somewhat aggravated by the fact that, in many instances, the compilations of the defendant failed to carry notice that the work was copyrighted, from which a purchaser might assume it was within the public domain.

While it is generally agreed that the imposition upon the public incident to sales of spurious goods does not give rise to private rights unless property rights of the plaintiff are thereby invaded (American Washboard Co. v. Saginaw Mfg. Co., 6 Cir., 103 F. 281, 50 L.R.A. 609), it is nevertheless well settled that the right in the trademark with the goodwill symbolized by it are property rights which the court will protect against invasion. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109, 106 A.L.R. 1476.

Whether the wrong is regarded as a violation of trademark rights, or as unfair competition, is not a matter of controlling importance. In either event, one is unlawfully appropriating the benefit of a goodwill which another has acquired as a result of continued usage and large expense. See Uproar Co. v. National Broadcasting Co., 1 Cir., 81 F.2d 373, 376; International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293.

Defendants have argued that there can be no unfair competition because plaintiff and defendants are not competitors. It has appeared that the defendants solicit trade from schools, and that the plaintiff also renders a service to schools and teachers. It also appears that both offer for sale books under similar titles, consisting of the same or similar materials compiled from plaintiff's magazine. It can hardly be said that there is no competition between the parties, but, however that may be, the doctrine that the opposing parties must be competitors in the same field no longer prevails. Prouty v. National Broadcasting Co., D.C., 26 F.Supp. 265, and cases cited.

The plaintiff has joined three individual defendants who organized the corporation and controlled and directed its activities while the infringing acts were committed. The authorities in this Circuit support the plaintiff's contention that the individual defendants can be held not only liable to injunction but liable in damages. National Cash-Register Co. v. Leland, 1 Cir., 94 F. 502; Fauber v. Springfield Drop-Forging Co., C.C., 98 F. 119; Calculagraph Co. v. Wilson, C.C., 132 F. 20.

The same rule has been followed in other circuits: Claude Neon Lights, Inc. v. American Neon Light Corp., 2 Cir., 39 F.2d 548; Hitchcock v. American Plate Glass Co., 3 Cir., 259 F. 948; D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 6 Cir., 259 F. 236.

Officers and directors also may be held responsible for acts of unfair competition. Federal Trade Commission v. Standard Education Soc., 2 Cir., 86 F.2d 692; Prest-O-Lite Co. v. Acetylene Welding Co., D.C., 259 F. 940.

Respecting the plaintiff's remedy, it would be impossible from the evidence be-

fore me to arrive at any satisfactory conclusion respecting the extent of the damages which the plaintiff would be entitled to recover, either for unfair competition or under the statute for trademark infringement. 15 U.S.C.A. § 96.

The copyright laws (17 U.S.C.A. § 25), however, afford adequate relief, both with respect to an injunction and as award of damages. The instant case is one where the court may properly apply the provisions of the statute which enables it to award "in lieu of actual damages and profits such damages as to the court shall appear to be just," which shall be not less than $250 nor more than $5000.

It has already appeared above that the defendants proceeded with their work of compiling and selling after they had been warned by the attorney for the plaintiff that such work would amount to an infringement. It also appeared that they had been advised by their attorney that their activities would not constitute infringement. They elected to act upon the advice of their own attorney rather than upon that of the adversary, and I can readily conclude that in so doing they honestly believed that they were within their rights. I do not think they should be severely penalized for their conduct. Their venture has not proved successful, and an injunction with a destruction of the books will entail still further loss.

For these reasons, I am led to believe that the plaintiff will secure adequate relief by an injunction against further acts of infringement and an award of damages for the minimum amount.

Counsel for the plaintiff may submit for approval a form of decree, consistent with this opinion.