**BURKE & VAN HEUSEN, INC.**

v.

**ARROW DRUG, INC.**

and

**Harry Black, Daniel Black and Ronald Voluck, trading as Arrow Drug Co.**

**Civ. A. No. 35065.**

United States District Court
E. D. Pennsylvania.

Sept. 23, 1964.

882

Erwin Miller, of Zoob, Cohan & Matz, Philadelphia, Pa., for plaintiff.

Albert H. Friedman, Philadelphia, Pa., for all defendants except Ronald Voluck.

FREEDMAN, Circuit Judge (acting by designation).

■ Defendants, a wholesale and retail drug corporation and its officers, have moved to dismiss this action for failure to state a claim upon which relief can be granted. Affidavits have been filed by both sides, and the motion therefore will be disposed of as one for summary judgment under Rule 56. (F.R. Civ.P. 12(b)).

Plaintiff, the holder of the copyrights to certain musical compositions, granted to Beecham Products, Inc., in exchange for agreed royalties, a restrictive license for the use of the compositions on long playing records which were to be used only as a premium in connection with the sale of a certain shampoo.

Beecham sold the records with the shampoo to Arrow Drug, Inc., which resold the records separately from the shampoo.

The contract between plaintiff and Beecham containing the restriction on the use of the records made under the license has not been pleaded, and no cause of action is asserted for breach of contract. What plaintiff claims is that the sales by defendant infringed its copyrights.[1]

■ The Copyright Act grants to the copyright proprietor the exclusive right to print, reprint, publish, copy, and vend the copyrighted work (17 U.S.C. § 1), but it gives him no further right of control over the use or disposition of the individual copies of the work once he has sold or otherwise disposed of them. Thus it has long been established that the purchaser of a copy of a literary work may use or dispose of that copy as he wishes, unrestricted by the copyright law,[2] although, of course, he may not publish or produce other copies of the work without the license of the copyright owner. The same rule applies to musical compositions, except that once the copyright owner has recorded or permitted the recording of the composition, § 1(e) of the Act permits anyone to make a recording of the composition upon notice and payment of a specified royalty to the copyright owner.[3]

The landmark case in this area is Harrison v. Maynard, Merrill & Co., 61 F. 689 (2d Cir. 1894). There unbound leaves of books were damaged by fire in the bindery to which the copyright owner had sent them. The bindery sold them as debris and the purchaser resold them as waste paper with a contractual provision that they be sold thereafter as paper stock only. They were later acquired by Harrison, a dealer in second hand books, who had them newly bound and sold them as books. It was held that since the copyright proprietor had transferred title to the copies of the copyrighted work, he could not by virtue of the copyright statutes restrain the sale of the copies, but was limited to his

1. The question whether plaintiff filed the notice of use required by 17 U.S.C. § 1(e) has been resolved by affidavit filed pursuant to leave granted at the argument.

2. See, e.g., Bobbs Merrill Co. v. Straus, 210 U.S. 339, 28 S.Ct. 722, 52 L.Ed. 1086 (1908); Harrison v. Maynard, Merrill & Co., 61 F. 689 (2d Cir. 1894); 18 C.J.S.

Copyright and Literary Property § 96; Nimmer, Copyright (1963), §§ 103.31, 103.32.

3. See Chappel & Co. v. Middletown Farmers Market & Auction Co., 334 F.2d 303, (3d Cir. 1964). See also RCA Mfg. Co. v. Whiteman, 114 F.2d 86 (2d Cir.) L. Hand, J., cert. den., 311 U.S. 712, 61 S. Ct. 393, 85 L.Ed. 463 (1940).

remedies for breach of contract. The Court said: "[T]he right to restrain the sale of a particular copy of the book by virtue of the copyright statutes has gone when the owner of the copyright and of that copy * * * has conferred an absolute title to the copy upon a purchaser, although with an agreement for a restricted use. The exclusive right to vend the particular copy no longer remains in the owner of the copyright by the copyright statutes. The new purchaser cannot reprint the copy. He cannot print or publish a new edition of the book; but, the copy having been absolutely sold to him, the ordinary incidents of ownership in personal property, among which is the right of alienation, attach to it. If he has agreed that he will not sell it for certain purposes or to certain persons, and violates his agreement, and sells to an innocent purchaser, he can be punished for a violation of his agreement; but neither is guilty, under the copyright statutes, of an infringement."[4] (p. 691).

In Bobbs Merrill Co. v. Straus, 210 U.S. 339, 28 S.Ct. 722, 5 L.Ed.2d 1086 (1908), the copyright owner sought to set a minimum retail price for copies of its books by placing a notice in each copy that sales below the price would be treated as an infringement. The Supreme Court held that "the sole right to vend" guaranteed by the copyright statute did not secure to the owner of the copyright the right to restrict the price on future sales of the book.

The "first sale" doctrine was first incorporated in the Copyright Act in 1909,[5] and now appears as § 27 of 17 U.S.C.: "The copyright is distinct from the property in the material object copyrighted, and the sale or conveyance, by gift or otherwise, of the material object shall not of itself constitute a transfer of the copyright, nor shall the assignment of the copyright constitute a transfer of the title to the material object; but nothing in this title shall be deemed to forbid, prevent, or restrict the transfer of any copy of a copyrighted work the possession of which has been lawfully obtained."

Plaintiff relies heavily on the recent case of Platt & Munk Co. v. Republic Graphics, Inc., 315 F.2d 847 (2d Cir. 1963). That case, however, expressly recognizes and reaffirms the "first sale" doctrine. It decided that where the "first sale" had not yet occurred, the copyrighted goods, nevertheless, were subject to the normal remedies of an unpaid manufacturer on obtaining a judicial determination of the amount due him.

The "first sale" doctrine applies to the sale of a copy which is combined with a non-copyrighted work. In Fawcett Publications, Inc. v. Elliott Publishing Co., Inc., 46 F.Supp. 717 (S.D. N.Y.1942), defendant purchased copies of plaintiff's copyrighted comic books, combined them with other comics, and sold the combination under covers labelled "Double Comics". It was held that plaintiff's copyright was not infringed. In Kipling v. G. P. Putnam's Sons, 120 F. 631 (2d Cir. 1903), it was held that the binding of unbound sheets of copyrighted works of Kipling, together with some

---

4. Our Court of Appeals followed the rule of Harrison v. Maynard, Merrill & Co., to reject a claim of copyright infringement when a second-hand periodical dealer who had purchased cover-removed comics from waste paper dealers resold them as "literature". Independent News Co. v. Williams, 293 F.2d 510 (3d Cir. 1961): "[W]here the publisher has parted with the title to the copyrighted work and despite the fact that as between the immediate parties there is a contractual restriction on its use, this restriction does not bar subsequent purchasers from vending the periodical as a literary work free of the restriction." (p. 517). The Court also relied on § 27 of the Act, as terminating the copyright holder's power of control in the sale of the copy "once there is lawful ownership transferred to a first purchaser". (p. 517).

See also Chappel & Co. v. Middletown Farmers Market & Auction Co., 334 F. 2d 303, (3 Cir. 1964).

5. Act of March 4, 1909 (35 Stat. 1084).

884

of his uncopyrighted poetry and an index, did not infringe plaintiff's copyrights.[6]

■ In the present case defendants separated the copyrighted work from another product and sold it separately. The principle which applies to the sale of a combination of a copyrighted and non-copyrighted work is equally applicable here. For the ultimate question under the "first sale" doctrine is whether or not there has been such a disposition of the copyrighted article that it may fairly be said that the copyright proprietor has received his reward for its use.[7] Plaintiff has received its reward under the copyright statutes. Royalties were paid to it by Beecham. Plaintiff chose to authorize Beecham to sell the records under a restrictive license agreement. Although its ownership of the copyright remains, it transferred the ownership of the records. The fact that defendants knew of the restrictions which were part of the license agreement between plaintiff and Beecham neither binds defendants to a contract to which they were not parties nor widens the scope of control granted by the Copyright Act.[8] We therefore do not reach the question whether the plaintiff's enforcement of the restriction against the defendants would run afoul of the anti-trust laws.

## ORDER

And now, September 23, 1964, summary judgment is directed to be entered in favor of defendants. Defendants may submit a form of order requiring payment by plaintiff of costs and a reasonable attorney's fee, pursuant to 17 U.S.C. § 116.

6. But cf. National Geographic Society v. Classified Geographic, Inc., 27 F.Supp. 655 (D.Mass.1939), where defendant was held to have infringed plaintiff's copyrights by disassembling old copies of plaintiff's periodicals, reclassifying the articles by subject matter, and binding compilations of the articles with prefatory material.

7. See Platt & Munk Co. v. Republic Graphics, Inc., 315 F.2d 847, 854 (2d Cir. 1963).

8. See Bobbs-Merrill Co. v. Straus, 210 U.S. 339, 350, 28 S.Ct. 722, 52 L.Ed. 1086 (1908), where defendant had notice of the restriction, and Independent News Co. v. Williams, 293 F.2d 510, 516 (3d Cir. 1961), where defendant had no knowledge of the restriction.