The C. M. PAULA COMPANY
v.
L. Gene LOGAN.
Civ. A. No. 4-2118.

United States District Court,
N. D. Texas,
Fort Worth Division.
March 5, 1973.

Carlisle Blalock, Dallas, Tex., for plaintiff.

D. Carl Richards, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

MAHON, District Judge.

Plaintiff, Paula Company, is an Ohio Corporation "engaged in the business of creating, producing and marketing a wide and diverse line of products, including greeting cards, post cards, stationery, note pads, motto cards, plaques, posters, statuettes, candles, and sundry gift items, all of which embody original art work, designs and text material . . ." In its complaint, plaintiff alleges that the defendant, L. Gene Logan, has been in the past, and is presently infringing on copyrights that plaintiff has in various pictorial art works imprinted on stationery and greeting cards created, published, and marketed by the Paula Company. The allegations of copyright infringement are directed at defendant's transferral of various copyright designs from Paula Company greeting cards and note pads to ceramic plaques produced and sold by defendant. The Paula Company describes the process employed by defendant as one that,

"involves the use of acrylic resin, emulsions, or similar compounds which act as a transfer medium to strip the printed indicia from the original surface on which it is printed, whereupon the image carrying film is applied to another article, such as the plaster base of a wall plaque. In effect, a decal picture is created.

"In a typical example of this type of transfer technique, the print to be transferred is first coated with a number of coatings of the resin emulsions to form a film, each such coating being permitted to dry or cure before the application of the next. After the applied coatings are thoroughly cured, the coated print is soaked in water to thoroughly wet the paper backing on which the picture was initially printed, whereupon the paper backing is peeled away, with the picture forming printing ink adhered to the resin film, which is insoluble in water. The rear surface of the film containing the transferred image is then coated with one or more additional layers of the resin emulsion, whereupon the film is adhered to a new support, such as a ceramic plaque, plate, or the like, which is also coated with the emulsion, and the film smoothed out and pressed into contact with the new support, usually with the use of a rubber roller. Various additional operations may be performed on the transferred film including an application of additional coatings of various substances to provide a glazed or crackled appearance, as well as to protect the underlying film."

It is undisputed that the Paula Company products utilized by the defendant in the above process are purchased by Logan at retail prices.

Paula Company urges that the actions of Defendant Logan are in violation of § 1(a) of the Copyright Act which provides, "Any person entitled thereto, upon complying with the provisions of this title, shall have the exclusive right: (a) To print, reprint, publish, copy, and vend the copyrighted work[.]" 17 U.S.C. § 1 (1970).

Plaintiff further contends that the transfer process employed by defendant with regard to Paula Company artworks is proscribed by § 7 of the Act which states:

"Compilations or abridgments, adaptations, arrangements, dramatizations, translations, or other versions of the work in the public domain or of copyrighted works when produced with the consent of the proprietor of the copyright in such works, or works republished with new matter, shall be regarded as new work subject to copyright under the provisions of this title; but the publication of any such new works shall not affect the force or validity of any subsisting copyright upon the matter employed or any part thereof, or be construed to imply an exclusive right to such use of the original works, or to secure or extend copyright in such original works." 17 U.S.C. § 7 (1970).

■ The Court notes at the outset that without copying there can be no infringement of copyright.[1] Further, plaintiff has the burden of establishing that there has been a copying [2]—a "reproduction or duplication" of a thing.[3]

The process utilized by defendant that is now in question results in the use of the original image on a ceramic plaque; such process is not a "reproduction or duplication."

■ The Court believes that plaintiff's characterization of the print thus used as a decal is appropriate.[4] Each ceramic plaque sold by defendant with a Paula print affixed thereto requires the purchase and use of an individual piece of artwork marketed by the plaintiff. For example, should defendant desire to make one hundred ceramic plaques using the identical Paula print, defendant would be required to purchase one hundred separate Paula prints. The Court finds that the process here in question does not constitute copying. See Blazon, Inc. v. DeLuxe Game Corp., 268 F.Supp. 416, 434 (S.D.N.Y.1965).

The plaintiff contends that the sale of the ceramic plaques with the Paula Company artwork affixed thereto is an infringement of plaintiff's exclusive right to vend as provided for in Section 1 of the Act.

Professor Nimmer writes:

". . . [G]ranting the exclusive right to vend (and publish) is a necessary supplement to the prohibition on copying in order to make fully effective the copyright owner's right to prevent public distribution of his work.

This rationale becomes inapplicable in the situation where the copyright owner first consents to the sale or other disposition of copies of his work. In such circumstances the copyright owner wishes still to prevent unauthorized copying, but it is no longer for the purpose of preventing distribution of the copies which he has released into the public channels consented to such disposition of his work. Therefore, the right to prevent unauthorized vending at that point (although still no doubt desired by the copyright owner) is no longer a necessary supplement for the purpose above described. In such circumstances, continued control over the vending of copies is not so much a supplement to the intangible copyright, but is rather primarily a device for controlling the disposition of the tangible personal property which embodies the copyrighted work. Therefore, at this point the policy favoring a copyright monopoly for authors gives way to the policy opposing restraints of trade and to restraints on alienation.

\*　\*　\*　\*　\*　\*

"It is clear that once the copyright proprietor consents to the sale of particular copies of his work, he may not thereafter exercise the right to vend with respect to such copies. Thus, in the usual situation the Sec. 27 exclusions mean that the right to vend may be exercised with respect to the initial sale of copies of the work, but may not prevent or restrict the resale of such copies."[5]　1 M. B. Nimmer,

1. Mazer v. Stein, 347 U.S. 201, 218, 74 S.Ct. 460, 471, 98 L.Ed. 630 (1954); 1 M. B. Nimmer, Copyright § 100 at 374 (1972).

2. Hayden v. Chalfant Press, Inc., 281 F.2d 543, 548 (9th Cir. 1960).

3. White-Smith Music Pub. Co. v. Apollo Co., 209 U.S. 1, 28 S.Ct. 319, 52 L.Ed. 655 (1908).

4. The rationale upon which the Court's holding is based makes it immaterial whether the paper backing is peeled away or not, since either process uses the original print.

5. The "first sale" doctrine is incorporated into Title 17 by Sec. 27 of the Copyright Act which provides: "The copyright is distinct from the property and the material object copyrighted, and the sale or conveyance, by gift or otherwise, of the material object shall not of itself constitute a transfer of the copyright, nor shall the assignment of the copyright

Copyright § 103.3 (1972)

As was stated in Burke & Van Heusen, Inc. v. Arrow Drug, Inc., 233 F. Supp. 881 (E.D.Pa.1964), "the Copyright Act grants to the copyright proprietor the exclusive right to print, reprint, publish, copy, and vend the copyrighted work (17 U.S.C. § 1), but it gives him no further right of control over the use or disposition of the individual copies of the work once he has sold or otherwise disposed of them." 233 F.Supp. at 882; Blazon, Inc. v. DeLuxe Game Corp., *supra*, 268 F.Supp. at 433.

In PIC Design Corporation v. Sterling Precision Corp., 231 F.Supp. 106 (S.D. N.Y.1964), the defendant purchased from an intermediary certain precision instrument components manufactured by PIC. Sterling removed PIC's markings, applied its own symbols, then resold the items. The Court, characterizing Sterling's acts as "reverse palming off," held that such facts were not actionable.

In Mastro Plastics Corp. v. Emenee Industries, Inc., 16 A.D.2d 420, 228 N. Y.S.2d 514 (1962), a case relied upon by the Court in PIC, the defendant had purchased bongo drums from the plaintiff, and had then removed the plaintiff's identifying labels. After having applied its own trade labels, the defendant had sold the bongo drums under its own brand. In its opinion, the Appellate Division Court of the State of New York said:

"The use of its own trade-mark amounted to a representation that defendant and not the plaintiff stood behind the sample chattel and behind the chattels bought in reliance upon the sample. This is the antithesis of palming off and the plaintiff demonstrates no actionable rights in the defendant's use of its own trade-mark on a product it bought to use in promoting its own products." 228 N.Y. S.2d at 517.

The facts before the Court reflect no violation of Paula's statutory rights to vend the copyrighted works.

It is also urged by plaintiff that the making of the ceramic plaques here shown would be an adaptation protected by the Copyright Act and that National Geographic Soc. v. Classified Geographic, 27 F.Supp. 655 (D.Mass.1939), should herein be controlling. There the defendant disassembled plaintiff's periodicals, reorganized them and sold them as new publications. The Court said that defendant's acts "amounted to a 'compilation' or an 'adaption' (sic) or an 'arrangement' of copyrighted works . . ." 27 F.Supp. at 660.[6] This Court does not believe the process here in question results in a compilation, adaptation, or arrangement as those terms are contemplated by Section 7 of Copyright Act.

While an individual is afforded the protection necessary to allow exploitation of other media, 1 M. B. Nimmer, Copyright § 101.5 at 380 (1972), the Court does not believe that the actions of defendant are such as would be proscribed either by the Act or under common law principles of unfair competition. See PIC Design Corporation, *supra*, 231 F.Supp. at 113.

Having concluded there is no copying of a copyrighted artwork, that the process does not entail a protected adaptation, and that no violation of Paula's statutory right to vend has been shown, the Court denies plaintiff's prayer for injunctive relief.

While the injunctive relief sought by plaintiff will not be granted, the Court is of the opinion that some action should be taken to insure that no confusion ex-

constitute a transfer of the title to the material object; but nothing in this title shall be deemed to forbid, prevent, or restrict the transfer of any copy of a copyrighted work the possesson of which has been lawfully obtained." 17 U.S.C. § 27 (1970).

6. *National Geographic* has apparently never been cited with approval for the point here advanced. Further, the holding has been questioned. Burke & Van Heusen, Inc. v. Arrow Drug, Inc., 233 F.Supp. 881, n. 6 at 884 (E.D.Pa.1964).

ists in the marketplace as to the source of defendant's product. Prestonettes, Inc. v. Coty, 264 U.S. 359, 368, 44 S.Ct. 350, 351, 68 L.Ed. 731 (cited in Scarves by Vera, Inc. v. American Handbags, Inc., 188 F.Supp. 255 (S.D.N.Y.1960)), provided that:

"A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his. . . . When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo."

Henceforth, defendant is to indicate on the back of all of its products upon which appear any of plaintiff's copyrighted artworks, by plainly visible label or stamp in easily readable letters of the same size, the following: "Artwork hereon is copyrighted design of C. M. Paula Co. which is in no way connected with L. Gene Logan Co., manufacturer of this plaque." Scarves by Vera, Inc. v. American Handbags, Inc., 188 F.Supp. 255, 258 (S.D.N.Y.1960).