**H.E. Elya PEKER, and Katrina Peker, Plaintiffs,**

v.

**MASTERS COLLECTION, Defendants.**

No. 98 CV 0672.

United States District Court,
E.D. New York.

May 16, 2000.

one of Elya's paintings to create an oil painting replica that was sold through catalogs and over the Internet. Both parties have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## I

The record, in substance, shows the following.

Plaintiff Elya is an artist whose oil paintings include "Flowers in Basket," "Big Bouquet of Flowers on Marble Table" ("Big Bouquet"), and "Flowers in Jug." He registered the copyright for these oil paintings on January 19, 1990.

Defendant Masters is a retail business that, among other things, purchases poster prints of paintings and resells them as framed oil painting replicas after adding paint to the poster to replicate the painting.

In 1991, Elya entered into a licensing agreement with Galaxy of Graphics, Ltd. ("Galaxy"), a graphics distributor company that makes and sells poster prints, granting it reproduction rights to produce posters of several of Elya's "paintings," including "Flowers in Basket," "Big Bouquet," and "Flowers in Jug." In return for the license, Elya received an advance of $250 for each "painting" used to make posters and a 10% royalty on each poster print sold.

Between March 1993 and October 1994, Masters purchased from Galaxy at least twenty-one poster prints of "Flowers in Basket," paying $4.50 or $5.00 for each print. The record also shows that Masters purchased at least six poster prints of "Flowers in Jug" and three of "Big Bouquet" between December 1991 and January 1992, paying $7.50 for each print.

To make each oil painting replica, Masters treats a poster with a thin coat of acrylic paint, allowing the poster's ink layer to be separated from its paper backing without ruining the image. The acrylic layer, now bearing the poster's ink image,

H.E. Elya Peker and Katrina Peker, Brooklyn, NY, pro se.

Robert Haroun, New York City, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiffs H.E. Elya Peker ("Elya") and Katrina Peker, *pro se*, bring this action for copyright infringement against defendant Masters Collection ("Masters"). Plaintiffs' complaint alleges that Masters infringed Elya's copyright when it used posters of

is then mounted on a canvas. Once mounted, Masters employs specially trained artists to apply oil paint in brush strokes to the image, attempting to match the color and style of the original painting. After applying the brush strokes, a thin veneer of protective varnish is applied, similar to the type of varnish used for oil paintings. The new oil painting replica, complete with tangible "bumps" where the paint has been applied, is then placed in a museum-quality frame and sold.

According to the record, Masters marketed the "Flowers in Basket" replica painting for up to $379. Defendant represents that it sold fifteen replica paintings of "Flowers in Basket" at different prices, ranging up to $322.15. The record also shows that Masters sold at least two such paintings of "Big Bouquet" for $199 and $189. Gregory Panjian, the president of Masters, states in a sworn affidavit that no other posters of Elya's paintings were "used" besides "Flowers in Basket," "Big Bouquet," and "Flowers in Jug."

## II

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The substantive law governing the case will determine those facts that are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is warranted only if "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Id.*

Moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III

Because plaintiffs are *pro se,* this Court has read their "supporting papers liberally, and will interpret them to raise the strongest arguments that they support." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

Plaintiffs' complaint alleges that Masters infringed Elya's copyright in his "painting," "Flowers in Basket." Elya has moved to amend his complaint to include other paintings. This motion will be discussed in the next section.

■ To establish a claim for copyright infringement, a plaintiff must show both (1) ownership of a copyright and (2) that defendant engaged in unauthorized "copying," which is shorthand for any infringement on one of the copyright owner's exclusive rights as defined under 17 U.S.C. § 106. *See Rogers v. Koons,* 960 F.2d 301, 306 (2d Cir.1992); *Microsoft Corp. v. Harmony Computers & Electronics, Inc.,* 846 F.Supp. 208, 210 (E.D.N.Y.1994).

■ Because Elya has submitted a certificate of copyright registration of his paintings, which serves as prima facie evidence of valid copyright ownership, *Rogers,* 960 F.2d at 306, the only issue is whether Masters "copied" Elya's painting in violation of his exclusive rights to (1) "reproduce the copyrighted work in copies" and (2) "prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106(1) and (2).

■ To show that a defendant has "reproduced" a copyrighted work without authorization, a plaintiff must establish that the defendant had access to the copyrighted work and that there is a "substan-

tial similarity between the copyrighted work and the alleged infringement." *Laureyssens v. Idea Group, Inc.,* 964 F.2d 131, 139 (2d Cir.1992). "Substantial similarity does not require literally identical copying of every detail." *Rogers,* 960 F.2d at 307. The necessary degree of similarity is established if " 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.' " *Id.* (quoting *Ideal Toy Corp. v. Fab–Lu Ltd.,* 360 F.2d 1021, 1022 (2d Cir. 1966)).

■ Masters without question had access to Elya's painting "Flowers in Basket" and used a copy of the painting in its replication process. There is also no question that Masters' oil painting replicas are "substantially similar" to Elya's copyrighted painting. An inspection of one of defendant's "Flowers in Basket" replicas submitted by defendant confirms that its replication process creates a convincing copy of the original oil painting. The replica is covered with numerous visible brush strokes and has the texture of an oil painting. A close and careful inspection reveals that some parts of the painting are not covered with brush strokes. The copying is blatant, and no average attentive lay observer would fail to recognize defendant's appropriation of Elya's work. *See Rogers,* 960 F.2d at 307–08; *Steinberg,* 663 F.Supp. at 712–14.

Masters treats the case as if it were selling merely framed posters and fails to mention throughout its papers that its replication process involves applying paint in brush strokes. It explains only that it transfers an image from a poster to a canvas, applies to the image a clear resin, and then re-sells the product in a museum-quality frame. From this description, one might conclude that Masters was in the business of selling fancy framed posters and not oil painting replicas.

But defendant's description is plainly misleading and is inconsistent not only with this Court's inspection, but also with defendant's own brochures, which claim that "[Masters'] artisans are carefully trained to recreate the brushwork of the different styles of paintings we offer. This attention to detail is what makes a replica from [Masters] virtually indistinguishable from the original oil painting masterpiece."

Even if not "virtually indistinguishable," defendant's replica is a convincing copy of Elya's painting and has been made without Elya's permission.

Masters Collection argues that it did not engage in unauthorized "reproduction" because (1) its replication process requires the purchase and use of one poster for each replica and (2) the "first sale doctrine," as codified in 17 U.S.C. § 109, protects its use and sale of each lawfully acquired poster.

Neither of these arguments apply to this case. Masters is not reselling a poster. It is selling a painting that uses the poster as one ingredient. The "first sale" · of the poster gives Masters the right to sell the poster in whatever fancy frame or other setting Masters chooses. What that "first sale" of the poster does not sanctify is Masters' transmogrification of that poster by adding paint into what Masters describes as a "virtually indistinguishable" copy of the "original oil painting."

The falsity of Masters' contentions is made evident by *C.M. Paula Co. v. Logan,* 355 F.Supp. 189 (N.D.Tex.1973), on which Masters relies.

The plaintiff in *Logan* owned the copyright to artwork used in greeting cards that it produced, and brought suit against the defendant for unauthorized copying. *See Logan,* 355 F.Supp. at 190. The defendant purchased plaintiff's greeting cards at retail stores, and used a transfer process that lifted the artwork images from the cards and mounted them on ceramic plaques. *See id.* After mounting an image, the defendant coated the surface with a transparent substance to protect the image and give it a "glazed or crackled appearance." *Id.* Defendant then re-sold the ceramic plaques. *See id.*

The District Court found that no unauthorized copying occurred and characterized as being akin to the use of a "decal" the defendant's use of the plaintiff's greeting cards. *Id.* at 191. The District Court noted that "[e]ach ceramic plaque sold by defendant ... requires the purchase and use of an individual piece of artwork marketed. by the plaintiff. For example, should defendant desire to make one hundred ceramic plaques ..., defendant would be required to purchase one hundred separate [greeting cards]." *Id.*

The District Court found that no "reproduction" occurred, because the defendant's process did not attempt to duplicate the plaintiff's original protected artwork and only transferred the original image to be displayed in a different medium. In *Logan,* defendant's process could be analogized to the lawful acts of purchasing a poster and re-selling it in a frame at a higher price. *See Lee v. Deck the Walls, Inc.,* 925 F.Supp. 576, at 579–80 (N.D.Ill. 1996) (analogizing transfer process similar to the one in *Logan* to placing a print or painting in a frame for resale) *aff'd sub nom. Lee v. A.R.T. Co.,* 125 F.3d 580 (7th Cir.1997) (*"Lee II"*); *but cf. Mirage Editions, Inc. v. Albuquerque A.R T. Co.,* 856 F.2d 1341 (9th Cir.1988).

Plainly the Masters replica painting is not made by a process "virtually identical" to the *Logan* process.

The two processes have different purposes. The purpose of Masters' process is to replicate the original painting in its appearance, texture, and use of materials. Masters does not just transfer a poster's image to a new medium. It also uses the image as a template for the application of oil paint brush strokes, making it easier for defendant to reproduce the exact colors and distinctive painting style of the original, down to the raised portions left by the brush strokes. In *Logan,* by contrast, the image was moved without changes, and the defendant made only trivial modifications in its display. The extra steps taken by Masters show that it has gone beyond the realm of merely re-displaying the poster's image and into that of outright copying of Elya's original painting.

This conclusion finds support in the Committee Notes to 17 U.S.C. § 106(1), which defines "reproduction," in pertinent part, as "produc[ing] a material object in which the [copyrighted] work is duplicated ... [or] imitated ... in a fixed form from which it can be perceived ... directly" (internal quotations omitted). By painting over the image on canvas, Masters "imitated" Elya's painting. In *Logan,* by contrast, the defendant's actions could be properly characterized as neither "duplication" nor "imitation."

Though there are more obvious ways to imitate a painting, such as placing tracing paper over a painting or copying from scratch while using a poster for guidance, Masters' method does not differ in substance as to its purposes or end result. *See, e.g., Rogers v. Koons,* 960 F.2d 301 (2d Cir.1992) (sculptor who recreated as a sculpture copyrighted photograph found on notecard); *Modern Publishing v. Landoll, Inc.,* 841 F.Supp. 129 (S.D.N.Y.1994) (infringing publisher imitated plaintiff publisher's copyrighted illustrations by hiring the same artist to draw similar illustrations in its new book); *Steinberg v. Columbia Pictures Industries, Inc.,* 663 F.Supp. 706 (S.D.N.Y.1987) (infringing defendants' movie advertisement used illustration imitating copyrighted magazine cover drawing). Painting over the image just made Masters' copying that much easier.

That Masters used one poster per replica is not a defense. First, moreover, Elya received approximately fifty cents in royalties per poster, while Masters could sell each replica for up to and over three hundred dollars. Whatever the precise value of Elya's contribution to the finished product, fifty cents strikes this Court as hardly a figure that captures a fair compensation for Elya.

In addition, when Elya entered into a licensing agreement with Galaxy to make

posters, the agreement contemplated nothing more than that. Elya hardly could have imagined that by entering into such an agreement he was opening the door to the lawful creation of numerous oil painting replicas without permission. In fact, Masters sought permission from Galaxy to create some of its replicas, though the record does not make clear for which posters. This suggests that Masters was at least cognizant that its process might require permission from the copyright owner.

The use of one poster per replica is relevant only to the extent that this case also implicates defendant's right to distribute lawfully acquired posters under the "first sale doctrine," codified in 17 U.S.C. § 109(a). That section provides, in pertinent part, that "Notwithstanding the [copyright owner's exclusive right of distribution], the owner of a particular copy ... lawfully made ... is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy ...." 17 U.S.C. § 109(a).

As explained by the Supreme Court in *Quality King Distributors, Inc. v. L'anza Research Int'l, Inc.*, 523 U.S. 135, 152, 118 S.Ct. 1125, 1134, 140 L.Ed.2d 254 (1998), the "whole point of the first sale doctrine is that once the copyright owner places a copyrighted item in the stream of commerce by selling it, he has exhausted his exclusive statutory right to control its distribution."

But though the first sale may extinguish the copyright owner's exclusive right to control distribution of that item, the "sale does not generally release other exclusive rights, such as the right to copy." *United Artists Television, Inc. v. Fortnightly Corp.*, 377 F.2d 872, 882 (2d Cir.1967); *see also Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*, 856 F.2d 1341, 1344 (9th Cir. 1988). It is no defense that Masters used a lawfully acquired object to achieve its unlawful goal of copying.

Elya's second claim for copyright infringement is that Masters Collection created a "derivative work" based on his "copyrighted work" in violation of 17 U.S.C. § 106(2). A "derivative work" is defined as "a work based upon one or more preexisting works, such as a[n] ... art reproduction ... or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101.

The Second Circuit has explained that "[i]n order for a work to qualify as a derivative work it must be independently copyrightable." *Woods v. Bourne Co.*, 60 F.3d 978, 990 (2d Cir.1995). Therefore the alleged infringement must possess a degree of originality that is "'at least some substantial variation [from the underlying work], not merely a trivial variation.'" *Id.* (quoting *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 491 (2d Cir.1976)). That "physical skill" or "special training" is necessary to create the derivative work cannot, without more, satisfy the requirement of originality. *Id.*

█ In light of these principles, there is no basis for claiming that Masters' replicas constitute derivative works. Defendant's replicas expressly purpose to copy Elya's painting and its particular style, and, though their creation may require special skills, they do not possess any originality that would warrant an independent copyright.

█ Elya's final claim is that the replication of his painting violated his rights under the Visual Artists Rights Act of 1990, 17 U.S.C. § 106A ("Artists Act").

The Artists Act provides, in pertinent part, that "the author of a work of visual art ... shall have the right ... to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right." 17 U.S.C. § 106A(a)(3). A "work of visual art" is defined as "a painting ... existing in a

single copy," but "does not include ... any poster." *Id.* § 101.

The language of the Artists Act makes clear that it has no application in the present context. Therefore Elya has no claim against defendant under the Artists Act for using posters of his work.

## IV

 In addition to his cross-motion for summary judgment, Elya moves to amend his complaint to include, among other things, "all images of Elya Peker that were used in any way shape or form [sic]" by defendant. Masters objects to the amendment on the ground of prejudice.

Federal Rule of Civil Procedure 15(a) provides that "leave [to amend the complaint] shall be freely given when justice so requires." Because the record indicates that Elya may have a valid claim against Masters for two other paintings, "Big Bouquet" and "Flowers in Jug," there is ample justification to allow Elya to amend his complaint to include claims for copyright infringement with respect to these two paintings. *See Whelan v. Bank United of Texas*, No. 97 CIV 0479, 1999 WL 285502, at *1 (S.D.N.Y. May 6, 1999) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." (quoting *Foman v.. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962))).

Defendant will suffer no undue prejudice. Elya filed his motion to amend the complaint before the close of discovery and before he filed his cross-motion for summary judgment.

## V

Plaintiffs may have summary judgment as to defendant Masters' liability for copyright infringement in Elya Peker's painting, "Flowers in Basket." Damages are referred to the Magistrate Judge for report and recommendation. Defendant's motion for summary judgment is denied.

Plaintiffs' motion to amend the complaint is granted only to the extent necessary to include copyright infringement claims against defendant for the paintings "Flowers in Jug" and "Big Bouquet."

Plaintiffs' motion to strike defendant's exhibit is denied.

Defendant's counterclaims are dismissed.

Plaintiffs may wish to obtain their own experienced counsel for the balance of their litigation.

So ordered.